People of the State of Illinois, Appellee, v. James C. Harris, Appellant.

Gen. No. 65-40.

Fifth District.

January 10, 1966.

Kassly, Weihl, Carr & Bone, of East St. Louis (Donald E. Weihl, of counsel), for appellant.

John M. Karns, Jr., State's Attorney of St. Clair County, of Belleville (James H. Bandy and John F. O'Connell, Assistant State's Attorneys, of counsel), for appellee.

GOLDENHERSH, P. J.

Defendant, James C. Harris, was tried by jury in the Circuit Court of St. Clair County, and convicted of the crime of bribery (Ill Rev Stats c 38, § 33–1, 1963). The court entered judgment on the verdict, denied defendant's application for probation, and sentenced defendant to the penitentiary for not less than 3 nor more than 5 years.

Defendant contends that the indictment does not meet the requirements set forth in Section 111–3 of the Crimimal Code of 1961. (Ill Rev Stats c 38, § 111–3, 1963.) In view of the opinion of the Supreme Court in People v. Blanchett, 33 Ill2d 527, 212 NE2d 97, the indictment sufficiently charges the offense of which defendant was convicted.

Defendant further contends that the evidence fails to prove him guilty of the crime of bribery beyond a reasonable doubt. The consideration of this contention requires a brief review of the indictment, and the evidence.

The indictment charges that while duly selected and serving as a juror, defendant solicited money which he was not authorized to accept, for his personal advantage, pursuant to an understanding that he would influence the performance of the jury of which he was a member, to the advantage of one Magdalene Hilderbrand, from whom he allegedly solicited a payment of money.

The testimony shows that Mrs. Hilderbrand was the plaintiff in a suit for damages. Her case came on for trial, a jury, of which defendant was a member, was selected and sworn, opening statements were made, and one witness testified. Court recessed for the day at 5:00 p. m. and Mrs. Hilderbrand drove from the court house in Belleville to the tavern which she operated. Because she was in court, the tavern had been closed during the day, and she opened it for business at 6:00 p. m. Shortly after she opened the tavern, defendant came in, seated himself at the bar, and ordered a bottle of beer. Mrs.

48

Hilderbrand testified that defendant asked her how she liked court, told her he had served on a jury during the preceding week in a case in which the International Shoe Company was the defendant, that a supervisor for International had contacted him at home one night and asked him "how $300 would look, that the company was sued for $40,000, and $300 was a drop in the bucket." She testified that defendant told her her lawyer was not asking for enough money, that her first witness (a physician) had "messed up her case." She stated the defendant told her to tell her lawyer that if he was interested in $15,000 to wipe his brow with a handkerchief at 10:00 a. m. the next morning, "then I will talk to my buddy about it." She testified the defendant was in her tavern for about 3 hours, drank several beers, talked to her several times during the time he was there, and while he was in the tavern he talked with no one but her. On cross examination, Mrs. Hilderbrand stated that at no time did defendant say he wanted money from her or her lawyer, he did not ask her for any money, and did not say he accepted money from International. She also stated that defendant did not say he would bring in a verdict in her favor, but said "he would talk to his buddy." Who the "buddy" was, or whether the reference is to a fellow juror, is not apparent from the record.

Euel Bushart testified that he lived near Mrs. Hilderbrand's tavern, that he was employed as a punch press operator, and worked part time for Mrs. Hilderbrand, helping her clean up her tavern. He stated that on the evening in question, he arrived at the tavern before Mrs. Hilderbrand, that there was a man in a car on the tavern parking lot, that it was the only car there at that time, and the man in the car was the defendant. He testified that as he worked around the bar he heard snatches of the conversation between defendant and Mrs. Hilderbrand, and heard the defendant mention International Shoe Company and $300.

49

Mrs. Hilderbrand was recalled as a witness for the People and testified that during the voir dire examination of the jurors in her personal injury suit, the jury was told that she operated a tavern, that it was called "Sybil's," and its location.

Defendant testified that he had served as a juror in the International Shoe case, he was selected as a juror in Mrs. Hilderbrand's case, after leaving the court house he drove to his wife's place of employment in St. Louis, drove his wife home, about 7:00 p. m. he went to Sybil's Tavern, while there, he drank one bottle of beer and part of another, a friend of his came in, his friend told him he was going to the race track, that he, the defendant, told his friend he wished he had $200 or $300 to bet on a horse "that was supposed to win," that he did not at any time talk to Mrs. Hilderbrand. He stated that Mrs. Hilderbrand was wearing a uniform and he did not recognize her until he had drunk part of his second beer, that as soon as he recognized her, he said "I have no business in here, I got to get out of here," and immediately left the tavern. On cross-examination he stated he did not know Mrs. Hilderbrand operated "Sybil's" and his stopping there for a drink and encountering his friend there were pure coincidences.

Joshua Goforth testified he knew the defendant, that he was on his way to the races, saw defendant's car parked near the tavern and went in. He testified to substantially the same conversation about the $200 or $300 as did defendant. On rebuttal, Mrs. Hilderbrand testified Goforth had never been in her tavern, and was not there on the night in question.

Defendant argues that Mrs. Hilderbrand's testimony shows there was no solicitation of money by defendant, and her statements on cross-examination demonstrate clearly that defendant, at no time, asked her for any money. He urges the record, at most, indicates an attitude of mind, that no act was committed, and before

a crime is completed, it must advance beyond the stage of a mere idea or mental attitude.

Prior to the adoption of section 33–1 (e) of the Criminal Code of 1961, although solicitation of a bribe was an offense at common law, it had not been the subject of any legislative enactment. In Walsh v. People, 65 Ill 58, at page 61, the Supreme Court said: "As we have seen, the mere offer to bribe, though it may be rejected, is an offense; and the party who makes the offer is amenable to indictment and punishment. The offer amounts to no more than a proposal to give a bribe; it is but a solicitation to a person to take one. The distinction between an offer to bribe and a proposal to receive one, is exceedingly nice. The difference is wholly ideal. If one man attempt to bribe an officer, and influence him, to his own degradation and to the detriment of the public, and fail in his purpose, is he more guilty than the officer, who is willing to make sale of his integrity, debase himself, and who solicits to be purchased, to induce a discharge of his duties? The prejudicial effects upon society are, at least, as great in the one case as in the other; the tendency to corruption is as potent; and when the officer makes the proposal, he is not only degraded, but the public service suffers thereby.

"According to the well established principles of the common law, the proposal to receive the bribe was an act which tended to the prejudice of the community; greatly outraged public decency; was in the highest degree injurious to the public morals; was a gross breach of official duty, and must therefore be regarded as a misdemeanor, for which the party is liable to indictment.

"It is an offense more serious and corrupting in its tendencies than an ineffectual attempt to bribe. In the one case, the officer spurns the temptation, and maintains his purity and integrity; in the other, he manifests a depravity and dishonesty existing in himself, which,

51

when developed by the proposal to take a bribe, if done with a corrupt intent, should be punished; and it would be a slander upon the law to suppose that such conduct can not be checked, by appropriate punishment."

█ It was not necessary that the defendant make a proposal specifying, in detail, the amount to be paid and how and when he was to receive it. When he made the proposal shown by the evidence, he had committed the offense contemplated by the statute.

█ Defendant contends that the evidence fails to prove him guilty beyond a reasonable doubt. The testimony was conflicting, and the credibility of the witnesses and the weight to be given their testimony were questions for the jury. We cannot say that the evidence is so improbable, unreasonable or unsatisfactory as to justify our holding that there is a reasonable doubt as to the guilt of the defendant. The People v. Lobb, 17 Ill2d 287, 161 NE2d 325.

█ Defendant complains of the giving of The People's Instruction number 8, which is in the same language as that found in The People v. Guido, 321 Ill 397, page 415, 152 NE 149. Although approved in a number of earlier opinions, this instruction was criticized in The People v. Ciucci, 8 Ill2d 619, 137 NE2d 40, in which opinion, the Supreme Court suggested the use of the words "authorizes" or "warrants," rather than "demands," and further suggested a qualification of the definition of circumstantial evidence. If, in our opinion, the giving of this instruction affected the result in this case, we would not hesitate to hold it to be prejudicial, but in the state of the record before us, we do not think the verdict would have been different, had the instruction been given after modification in the manner suggested by the Supreme Court.

█ Subsequent to conviction, the defendant made application for probation. The record shows that the court received a report from the Probation Officer, but

the report is not included in the record. There was no evidence offered in mitigation or aggravation, nor does the record show that defendant was advised of his right to offer such evidence, or that he waived the right so to do. In People v. Evrard, 55 Ill App2d 270, 204 NE2d 777, this court said that it was the legislative intent that the court hear and receive evidence, if any, as to the moral character, life, family, occupation and criminal record of the defendant in all cases wherein there is a conviction. In People v. Smith, 62 Ill App2d 73, 210 NE2d 574, the Appellate Court for the First District stated that the burden of requesting the hearing is on the defendant. We agree with the conclusion reached by our colleagues of the First District, subject to the limitation that a defendant should not be deemed to have waived a statutory right in the absence of evidence that he was aware of that which he is supposed to have waived. The decisions of our Supreme Court holding the right to have been waived involved proceedings prior to the effective date of The Criminal Code of 1961. The People v. Wakeland, 15 Ill2d 265, 154 NE2d 245 (1958), The People v. Muniz, 31 Ill2d 130, 198 NE2d 855. In the Muniz case, although the opinion was filed in 1964, the defendant had been sentenced in 1956. Also the language on page 138 of the opinion reveals circumstances peculiar to that case, and not present in the case at bar. In determining whether a defendant has waived a right, the test to be applied is aptly stated in Johnson v. Zerbst, 304 US 458, 58 S Ct 1020, wherein the Supreme Court, through Mr. Justice Black said, "A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege."

In Rule 27(6) of its Rules, the Supreme Court has directed that in all cases in which the defendant is sentenced to the penitentiary, except where convicted upon a plea of guilty, the trial court shall advise him of his right to appeal, and, if indigent, of his right to a transcript and the services of appointed counsel. The

right to present evidence in mitigation, which might tend to persuade the court to impose a less severe sentence than would be ordered in the absence of such evidence, is as valuable and important a right as the right of appeal. In the absence of a showing in the record that the defendant was advised of his right to offer evidence in mitigation, and upon being so advised, expressly waived that right, the defendant was entitled to offer such evidence and have it included in the record.

For the reasons herein set forth, the judgment of the Circuit Court of St. Clair County is affirmed, but the cause is remanded with directions that the sentence be vacated and the defendant given an opportunity to offer evidence in mitigation, prior to the imposition of sentence.

The court expresses its thanks to appointed counsel who skillfully and thoroughly briefed and argued this cause.

Judgment affirmed and remanded with directions.

MORAN and EBERSPACHER, JJ., concur.