(No. 33392.—)

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD G. LEHMAN, Plaintiff in Error.

*Opinion filed March 24, 1955.*

THOMAS ALLEGRETTI, (STEPHEN LEE, of counsel,) both of Chicago, for plaintiff in error.

LATHAM CASTLE, Attorney General, of Springfield, and JOHN GUTKNECHT, State's Attorney, of Chicago, (FRED G. LEACH, GEORGE W. SCHWANER, JR., JOHN T. GALLAGHER, and RUDOLPH L. JANEGA, of counsel,) for the People.

Mr. JUSTICE SCHAEFER delivered the opinion of the court:

The defendant, Richard G. Lehman, was indicted in the criminal court of Cook County upon two separate charges of robbery while armed with a dangerous weapon. In case No. 52-1989, he was charged with the armed robbery of Alvin K. Anderson with a pistol and the theft of $3000 and a truck valued at $3000; in No. 52-1990, he was charged with the armed robbery of Robert T. Curran with a pistol and the theft of $1900 and a truck valued at $3000. In each case the indictment charged that the money and the truck were the property of the Illinois Bell Telephone Company. Defendant waived a jury trial in each case, was found guilty in each, and was sentenced to imprisonment in the penitentiary for terms of not less than three nor more than fifteen years, the sentences to run concurrently.

Defendant does not challenge the sufficiency of the evidence to warrant a conviction. In No. 52-1990, which was tried first, he contends that detailed evidence of the circumstances attending his arrest was erroneously admitted. In No. 52-1989, stipulations were entered into that if certain witnesses were called to testify, their testimony would be the same as in No. 52-1990. He contends that these stipulations violated substantial requirements of orderly procedure.

In No. 52-1990 Curran testified that he is employed by the Illinois Bell Telephone Company to make collections

from public pay telephones; that on June 17, 1952, about
1:00 P.M., upon returning to a company truck after mak-
ing a collection at a restaurant on North Ridge Avenue, in
Chicago, he was pushed from behind and fell forward to
the floor; that he looked back and saw defendant, who
was holding a revolver in his right hand and a paper bag
in his left hand; that defendant had on a pair of sun
glasses and was wearing brown dress gloves and "louvre"
shoes interwoven with lattice work; that defendant com-
manded him to lie face down on the floor of the truck,
stating that if he did what he was told nothing would
happen to him; that he obeyed and defendant tied his
wrists and feet with twine, took the ignition keys, and
drove the truck away. Curran testified further that after
making a few turns, defendant stopped and another man,
later identified as Albert Hynes, entered the truck and
drove it; that defendant went back to the receptacles hold-
ing the coins collected and poured the money into card-
board boxes; that defendant and Hynes stopped the truck
every five or ten minutes, left it for brief periods of time,
returned, and resumed driving; that after nearly fifty
minutes had elapsed, Hynes left the truck, and defendant
sat for a few minutes, and that before he also left the
truck, he said to Curran: "I notice you are married and
for the sake of you and your family I would forget and
the better it will be." Curran further testified that approxi-
mately $2000 belonging to his employer was taken from
the truck, and also his route book which contained sheets
for recording the date of each collection and the amount
of money taken from each telephone, and that the book
showed collections to be made over a fifty-six day period.

Over objection, Curran testified that on August 12,
about 11:30 A.M., while making collections on his route,
he observed a 1946 Ford automobile following him; that
he communicated with the police and, about 1:00 P.M.,
saw two police officers, talked to them, returned to his

truck, and made approximately thirty collections on Devon Avenue between 1:00 and 3:00 P.M.; that about 3:00 o'clock, after crossing the intersection of Clark Street and Devon Avenue, he heard a "screeching of tires," looked through the rear-view mirror and saw the police car forcing the car which had been following him to the curb; that he parked his truck and joined the police officers, where he recognized defendant as the man who robbed him on June 17.

Officer Marvin Carlson testified that about 1:30 P.M. on August 12 he saw defendant and another man riding in a 1946 Ford automobile on Devon Avenue east of California Avenue; that this car was "tailing" Curran's telephone truck for about an hour and a half; that every time Curran stopped his truck to make a collection and pulled away, the second car would also stop and then follow the truck about half a block to the rear; that about 3:00 P.M., when in the vicinity of Clark Street and Devon Avenue, he and his partner forced the Ford car over to the curb, identified themselves, and ordered the two men to get out of their car with their hands up; that as he was coming around the back end of the car to the sidewalk, he saw defendant drop a gun at the curb which, upon examination, he found was loaded. Carlson testified that Curran nodded that defendant was the man who had previously held him up. Carlson searched the car in which defendant had been riding and found a black leather bag containing a cap, sun glasses, gloves and string or twine. The radio in the car was tuned to police calls. Two pieces of twine were found in defendant's shirt pocket at the police station.

The gun, cartridges, sun glasses, gloves, the twine used to tie Curran on June 17, and the twine recovered from defendant's pocket when arrested were received in evidence. Curran testified that the gun looked like the one defendant pointed at him; that the sun glasses and gloves resembled those worn by defendant on June 17. He identified the

twine used to tie him. Carlson also identified the articles, with the exception of the twine used on June 17.

After defense testimony, which consisted of defendant's denial of guilt and an alibi testified to by him and by other witnesses, defendant was found guilty. The prosecution announced its readiness to proceed with indictment No. 52-1989. When the court advised defendant that he could be tried with or without a jury, defendant waived a jury trial and his attorney said, "We will stipulate most of the testimony will be the same. We have agreed on that." Anderson, also a collector for the telephone company, then testified that on June 30, 1952, about 12:45 in the afternoon, after making a collection at 1149 North La Salle Street, he stepped into the truck he was driving, felt something in his back, turned around and saw defendant who had a gun, and ordered him to lie down on the floor of the truck. Anderson testified that defendant wore a tan peaked cap and regular glasses; that defendant took the keys to the truck, and after driving a short distance, stopped and bound Anderson's hands with a piece of cord; that he then drove a block when he picked up another man, and that immediately before the second man entered the truck, defendant placed a handkerchief over Anderson's face. He testified further that after the second man entered the truck, defendant stood on Anderson's legs; that he could see defendant through the handkerchief and observed he was wearing a pair of tan gloves as he started to remove the collection boxes from the drum and open them. Anderson testified further that at several stops the driver would say, "Down," and defendant would crouch in the corner so no one would see him; that after a while the driver left the truck; that defendant drove another block or two, stopped the truck, bound Anderson's legs, threw a newspaper over his face, and told him to lie on his stomach. Defendant took from Anderson approximately $3000 belonging to the telephone company. On August 12, he iden-

tified defendant at the police station as the man who held him up on June 30.

The gun, the sun glasses, the shoes and the twine found on defendant on August 12 received in evidence in No. 52-1990, were also received in evidence in No. 52-1989. Anderson said that the gun was similar to the gun brandished on June 30. He identified the cord which defendant tied around his hands, and the gloves as those which defendant was wearing when he took the cash out of the coin boxes.

When Officer Carlson was called as a witness, it was stipulated that his testimony, including the cross-examination, would be the same as given in No. 52-1990. The same stipulations were made concerning the testimony of defendant's witnesses. Defendant denied robbing Anderson on June 30, 1952. His attorney asked, "And will it be further stipulated the balance of the testimony be received that the defendant gave in the other case, and that it be received in this case?" The court answered, "Yes, except it applies to the time of this case." To the court's inquiry whether there was anything else, defendant's attorney replied: "Just that the argument of counsel be considered the same except as to the date."

Defendant contends that the testimony that he had been following Curran's truck prior to his arrest on August 12 was prejudicial because it implied that he was preparing to rob Curran. We agree that the testimony gave rise to that inference. We do not agree that it was therefore inadmissible. Evidence of other crimes is objectionable "not because it has no appreciable probative value, but because it has too much." (I Wigmore, Evidence, 3rd ed., sec. 194.) The law distrusts the inference that because a man has committed other crimes he is more likely to have committed the current crime. And so, as a matter of policy, where the testimony has no value beyond that inference, it is excluded. But where the evidence is independently relevant

it is admissible as, for example, where it shows motive or intent, identity, absence of mistake or accident, or the existence of a common scheme or design. I Wigmore, Evidence, 3rd ed., sec. 216.

In the present case the person who committed the robbery on June 17 took Curran's route book, which gave the locations from which collections were to be made for a period of fifty-six days. The gun, sun glasses, twine, gloves, and shoes taken upon the defendant's arrest were identified as being the same as or similar to those worn or used by the robber. Under these circumstances, and in view of the peculiar and distinctive features common to the robbery and to defendant's conduct on the day of his arrest, it was not improper to admit the testimony. (See II Wigmore, Evidence, 2nd ed., sec. 304; *Whiteman* v. *State,* 119 Ohio St. 285, 164 N.E. 51.) Defendant suggests that a distinction is to be drawn between prior and subsequent offenses. There are decisions making that distinction where the question at issue is one of knowledge or intent. (See *People* v. *Gotler,* 311 Ill. 387; *People* v. *Hobbs,* 297 Ill. 399.) But here the question is whether the defendant's conduct evidenced a peculiar plan to commit a particular offense, and we see no reason to exclude conduct occurring subsequently. (*Cf. People* v. *Botulinski,* 392 Ill. 212; *Perry* v. *People,* 116 Colo. 440, 181 Pac. 2d 439; II Wigmore, Evidence, secs. 304, 316.

Defendant's second contention is directed to the procedure pursued upon his trial in No. 52-1989. It appears that defendant, who was represented by competent counsel of his own choice, entered into stipulations agreeable to, if not invited by, his attorney. The stipulations specifically covered the testimony of the arresting officer, of the defendant himself, and even the closing argument. In *People* v. *Anderson,* 239 Ill. 168, a murder case in which the death penalty was sustained, this court said (p. 186) : "Where parties enter into an agreement in reference to the

344

course to be pursued in any particular litigation they will not afterwards be heard to complain that the court acted on the stipulation, except where, as the result of so doing, the court has exercised, or attempted to exercise, jurisdiction not given by law." *Cf. People* v. *Morgan,* 2 Ill. 2d 360, 362.

The judgments of the criminal court of Cook County are affirmed.

*Judgments affirmed.*