**People of the State of Illinois, Plaintiff-Appellee, v. Jerry Ledferd, Defendant-Appellant.**

**Gen. No. 10,903.**

Fourth District.

April 3, 1968.

CRAVEN, J., dissenting.

J. Waldo Ackerman, of Springfield, for appellant.

Raymond L. Terrell, State's Attorney, of Springfield, and Richard A. Hollis, Assistant State's Attorney, for appellee.

TRAPP, J.

Defendant appeals his conviction of armed robbery following a jury trial. The trial court denied the post-trial motions filed, and imposed a sentence of 5 to 10 years to run consecutively to a sentence of 5 to 15 years for another armed robbery.

Defendant's theory is that the denial of a motion to suppress witnesses violated his rights under the Constitution of the United States and the State of Illinois; that the evidence failed to establish guilt beyond a reasonable doubt; that the jury was improperly instructed by the court, and that the sentence is excessive.

Defendant was charged with the robbery of a drive-in restaurant at Pleasant Plains on March 4, 1966. Over the period of the next two weeks the investigating deputy sheriff showed a series of 15 to 20 pictures to the proprietor and three patrons present during the robbery. Each witness picked the picture of the defendant from the group of pictures shown. So far as it appears from

the record the witnesses made such identification at different times and places, and separately from the other witnesses.

On March 25, 1966, defendant was being held in the jail upon another charge of armed robbery, an offense not at issue here. A public defender had been appointed to represent him on such charge, but the two had not yet conferred. On that evening defendant was placed in a lineup at the City Jail with four or five other men. The proprietor, Richards, and a patron, Talbert, were present and identified defendant as the person committing the robbery on March 4th. Thereafter, on March 28th, defendant was charged with the robbery at issue and was indicted for such offense on May 3, 1966. Certain testimony of the defendant relates to a lineup held on March 27th, but the record does not disclose whether the witnesses in this case were present.

On January 10, 1967, a witness, Mrs. Douglas, went to the County Jail and defendant was placed in a room with the expectation that she might observe him. She was, however, only able to see the back of his head and attempted no identification.

Counsel for defendant, appointed and serving at the time of trial and upon this appeal, filed a "Motion to Suppress Witnesses" upon the theory that the identification procedures were so unfair as to deprive him of constitutional rights. The evidence was heard upon the motion and the trial court reserved ruling pending the trial of the case, which commenced immediately thereafter. Such motion to suppress witnesses was presented to the trial court upon the authority of Butler v. Crumlish, 229 F Supp 565, which held that there was invidious discrimination against one held upon failure to make bond who is required to submit to the investigative process of the police when a person who is financially able to make bond is not subject to such procedure. The trial court noted that such authority was repudiated in Rigney

v. Hendrick, 355 F2d 710, from the same Federal District. In this court the motion is argued upon the authority of United States v. Wade, 18 L Ed2d 1149; Gilbert v. California, 18 L Ed2d 1178 and Stovall v. Denno, 18 L Ed2d 1199. In Gilbert and Wade, post-indictment lineups were staged without notice to counsel appointed to represent the several defendants. Noting at length the techniques and methods by which law enforcement officials might suggest to witnesses the identity of the accused in the lineup, or insure that the witness made a subsequent courtroom identification of the person charged, the United States Supreme Court held that such lineup without notice and opportunity for counsel to be present was a violation of the Sixth Amendment to the United States Constitution in that the accused was deprived of the right of counsel at a "critical stage of the proceedings." Denial of due process is not an element in these opinions. In Stovall v. Denno, the court announced that the rule of Gilbert and of Wade affected only cases where confrontations for identification purposes were conducted in the absence of counsel after the date of the opinions in Gilbert and Wade, i. e., June 12, 1967, for the reason that law enforcement officers, as in this case, had long relied upon the acceptance by the courts of pretrial confrontations for the purposes of identifications. Upon the authority of Stovall and People v. Boney, 38 Ill2d 23, 230 NE2d 167, the constitutional rule asserted will not be applied retroactively.

Again, we have reviewed this record in the light of the standard stated in Wade to ascertain whether the courtroom identification had such origin independent of the lineup as to convince that it was made without improper influence of, or suggestion to, the witness through the process of confrontation.

The record shows an opportunity for the witnesses to observe the defendant, for the restaurant is described by all as brightly lighted, and each witness was in close

proximity to the defendant—the distances in evidence range from 8 feet to as close as 3 feet. No substantial discrepancy in the prelineup descriptions given by the witnesses to the investigating deputy and defendant's actual description has been pointed out, except a possible lower estimate of age made by one witness in conversation with defendant's counsel. We have found no other discrepancy in our examination of the record. No witness testifying had identified another person as committing the offense. While each witness made an initial identification from a picture of the defendant, the record shows that each chose defendant's picture from a group of some 20 pictures. In terms of time, such identifications were made within two weeks of the offense, and Richards and Talbert identified the defendant in the lineup on the 25th of March, 1966. From the record one can reasonably conclude that the photographs were employed to establish a basis for charging an offense and were not used to influence the witnesses in making a subsequent courtroom identification.

 Finally, defendant testified at the motion to suppress that all persons in the lineup of four or five men held on March 25, 1966, put on the same garments and sunglasses and spoke the same words or phrases. The record fails to support the contention that the lineup confrontation was so unfair as to amount to a denial of constitutional due process.

Defendant urges that there was failure to prove him guilty beyond a reasonable doubt so that his conviction must be reversed as a matter of law. As opposed to the prosecution witnesses, and their identification of the defendant, the defendant and four witnesses testified to his presence at Bob's Corner Tavern in Springfield from 6:00 p. m. on March 4, 1966, until 1:00 a. m. the following morning. Defendant was a part-time bartender at the tavern and his witnesses were more or less regular patrons of the business, as well as defendant's acquaint-

ances. The occasion was recalled as a champagne birthday party for one of the witnesses. Defendant was not working as a bartender on that occasion, but allegedly purchased the champagne. The witnesses for the prosecution and the witnesses for the defense produced complete contradictions in their testimony as to defendant's attire, appearance and degree of sobriety upon the evening in question. No alibi witness claims to have had defendant under continuous observation throughout the evening, but each speaks of seeing him from time to time.

The defendant testified that he gave an investigating deputy the names of three persons who would testify to his presence at the tavern and argues that there was no investigative attempt to determine whether such persons would corroborate the alibi. The deputy testified in rebuttal that defendant told him that he was at the tavern, but refused to discuss his acts and did not give the names of persons who would substantiate his presence there.

■ This case presents an issue of fact for the jury which includes the determination of the credibility of the witnesses. The trial judge, who also observed the witnesses, denied a motion for a new trial upon the sufficiency of evidence. The evidence upon which this conviction rests is not so unreasonable, improbable or unsatisfactory as to require this court to say that there is a reasonable doubt of guilt. People v. Scott, 38 Ill2d 302, 231 NE2d 441; People v. Ashley, 18 Ill2d 272, 164 NE2d 70. In the language of Ashley, it may be said that the identification of the defendant by the witnesses for the prosecution was positive and unhesitating, and indeed prompt.

■■ Defendant complains of the refusal to give six tendered instructions severally directed to the defense of alibi, the presumption of innocence, and to the necessity of proof of material allegations beyond a reasonable doubt. Defendant filed a motion in writing for a new

trial and an amendment thereto, neither of which made reference to the refusal of the tendered instructions. The Code of Criminal Procedure, chapter 38, § 116–1(c), Ill Rev Stats 1965, provides that a motion for a new trial should specify the grounds for such. Our courts have determined that a party is limited to the claim of error set out in the motion for a new trial and that all other errors are waived. People v. Hunter, 23 Ill2d 177, 177 NE2d 138; People v. Whitehead, 35 Ill2d 501, 221 NE2d 256. In Hunter, error as to an instruction upon alibi is included in the doctrine of waiver. This case does not come within the fundamental fairness exceptions of the rule announced in People v. Cage, 34 Ill2d 530, 216 NE2d 805; People v. Sprinkle, 27 Ill2d 398, 189 NE2d 295. The principles stated in the refused instructions were covered in other given instructions.

The trial court imposed sentence on February 23, 1967, to run consecutively to a sentence for armed robbery imposed in the same court on November 25, 1966. The latter offense occurred on March 25, 1966. It is urged that sentence imposed to run consecutively is excessive in that defendant had no prior criminal record.

At the hearing for sentence the court inquired concerning evidence in mitigation and aggravation. Defendant's counsel advised that no evidence would be offered in mitigation. The court then inquired of defendant whether he wished to put in evidence of mitigation, which was explained by the court as evidence so that defendant could ask for "as light a sentence as possible." Defendant stated that he understood and had no such evidence. The court requested the State's Attorney to make a recommendation as to sentence. The latter advised the court of defendant's recent conviction upon another charge of armed robbery and recalled that in the offense at issue, defendant had actually discharged a firearm. The record shows that defendant fired his weapon into the ceiling

when a patron of the restaurant failed to produce his billfold with alacrity, and that four patrons of the restaurant were actually victims of the robbery, as well as the proprietor of the business. In fixing sentence the court commented that robbery, while armed with a weapon, created great danger.

The imposition of consecutive sentences upon conviction of two or more offenses which do not result from the same conduct is authorized in the Criminal Code, chapter 38, § 1–7(m), Ill Rev Stats 1965. The statute makes such sentence a matter of judicial discretion. Prior to such statute, it was held that consecutive sentences could be imposed under the Common Law, People v. Vraniak, 5 Ill2d 384, 125 NE2d 513, and that such sentences were authorized where the accused had committed distinct offenses which merited separate penalties. People v. Heirens, 38 Ill2d 294 at 302, 230 NE2d 875; People v. Loftus, 395 Ill 479, 70 NE2d 573; People v. Decker, 347 Ill 258, 179 NE 827.

Reviewing courts were first authorized to reduce sentences imposed by the trial court under the provisions of the Code of Criminal Procedure, chapter 38, § 121–9(4), Ill Rev Stats 1965. The authority is now exercised under Supreme Court Rule 615.

As tested in experience, the Appellate review of sentences alleged to be excessive or harsh has required reliance upon evidence of the offense in the record and the use of relevant evidence as to moral character, the life, family associations, occupation and criminal record of the defendant placed in the record through a hearing in aggravation and mitigation of the offense as authorized by chapter 38, § 1–7(g), Ill Rev Stats 1967.

Such hearing in mitigation may be intentionally waived if such waiver is made understandingly. People v. Harris, 66 Ill App2d 46, 213 NE2d 588; People v. Spaulding, 75

Ill App2d 278, 220 NE2d 331. The record in this case clearly shows an express and understanding waiver of hearing in mitigation by both defendant and his counsel. People v. Smice, 79 Ill App2d 348, 223 NE2d 548.

 In reviewing sentences as authorized, it has been determined that substantial reasons for reducing a sentence must be shown. People v. Johnson, 68 Ill App2d 275, 215 NE2d 144; People v. Stevens, 68 Ill App2d 265, 215 NE2d 147; People v. Valentine, 60 Ill App2d 339, 208 NE2d 595; People v. Shockey, 66 Ill App2d 245, 213 NE2d 107. This determination coincides with the pronouncement of the Supreme Court that reviewing courts should exercise restraint and caution in reducing sentences imposed in the trial court. People v. Taylor, 33 Ill2d 417, 211 NE2d 673. See also People v. Davidovic, 68 Ill App2d 216, 215 NE2d 474. The burden is upon the defendant to present such evidence to the reviewing court upon the issue of the severity of the sentence as will authorize a reduction. As stated in People v. Shockey, 66 Ill App2d 245, 213 NE2d 107, the defendant should tell us about the reasons for reducing the sentence. See also People v. Smice, 79 Ill App2d 348, 223 NE2d 548; People v. Smith, 62 Ill App2d 73, 210 NE2d 574; Halperin, Appellate Review of Sentence in Illinois, 55 Ill Bar Jour 300, p 313. Upon this appeal nothing is presented except an assertion that the sentence is excessive.

 There is claim of error in the impeachment of defendant by introduction of his record of prior conviction while such was pending on appeal. This issue is controlled by the majority opinion in People v. Spears, 83 Ill App2d 18, 226 NE2d 67. Upon a companion issue, the transcript does not support the assertion that the criminal record introduced to impeach defendant failed to show the return of the indictment into open court.

The conviction is affirmed.

Affirmed.

SMITH, P. J., concurs.

CRAVEN, J., dissents.

CRAVEN, J., dissenting:
There are two aspects of this case that compel this dissent. I agree with the majority opinion generally as to its disposition in all matters except the approval of the consecutive sentence and the approval of the use of a prior conviction which was pending on appeal for purposes of impeaching the defendant. The reasons for my views on the latter point are set forth in the dissenting opinion in People v. Spears, 83 Ill App2d 18, 27–31, 226 NE2d 67, 72–73 (4th Dist 1967).[1]

Section 1–7(m) of chapter 38, Ill Rev Stats 1967, authorizes the sentencing court to impose concurrent or consecutive sentences for offenses not arising out of the same conduct. It has long been held that in the absence of a specific determination by the sentencing judge, multiple sentences were to be served concurrently. See People ex rel. Clancy v. Graydon, 329 Ill 398, 160 NE 748 (1928); People v. Kamrowski, 412 Ill 383, 107 NE2d 725 (1952). It seems clear from the statutory scheme of sentencing which provides for indeterminate sentences to be imposed by the trial judge and, for the first time in

[1] In People v. Barney, 89 Ill App2d 180, 232 NE2d 481 (1st Dist 1967), the court approved the use of a prior conviction on appeal that was ultimately reversed for purposes of impeachment, but held that sentencing the defendant as a subsequent offender by reason of the prior conviction entitled the defendant to re-sentencing. In the instant case, the conviction on appeal that was used for impeachment was ultimately affirmed (38 Ill2d 607, 232 NE2d 684 (1968)).

Illinois, appellate review of sentences, that while a sentencing judge is authorized to impose consecutive sentences, the act of so doing must find substantial basis in the record and must be done in the exercise of judicial discretion. No finding is made in this record sufficient to warrant consecutive sentence.

The consequence of the consecutive sentence is that the defendant must first serve the five to fifteen-year sentence and at the conclusion of that sentence he then must serve the five to ten-year sentence. It cannot be determined with certainty the time to be served, but it seems fitting to examine the possible consequences of the consecutive sentence with reference to the legislative framework for sentencing and enlightened penology.

The legislature has said it is the general purpose of the criminal law that sentences be imposed so as to provide penalties that are proportionate to the offense and which permit of recognition of differences in rehabilitation and to prevent arbitrary or oppressive treatment of persons convicted of offenses. (Ill Rev Stats 1967, c 38, § 1–2(c), (d).) Many factors must be considered in the imposition of a sentence. The ultimate objective of a sentence must involve punishment, isolation from society, rehabilitation, deterrence, consideration of the law violated, its immediate and long-range purposes, public attitudes toward the law, as well as all factors personal to the individual offender including his age, mental and physical health, education, occupational capabilities and previous good or bad conduct. (See Boldt, Recent Trends in Criminal Sentencing, Fed Prob, March 1963, p 3.)

A sentencing judge has a difficult and unenviable task. The imposition of a sentence necessarily involves prediction of human behavior. Professionals in the behavioral sciences are imperfect in their predictions after studied evaluation of offenders. A sentencing judge, without the

benefit of the studies of the professionals, must, nonetheless, by his sentence, make a prediction. Indeterminate sentencing is provided and is designed to minimize the necessity for such prediction. Few could disagree with the observation of Dr. Karl Menninger that no man can tell in advance how long it will take to effect a change in a human being. (Address by Karl Menninger, M.D., Community Attitudes vis-a-vis the Offender, ABA, Proceedings of Section on Criminal Law 84 (1958).) The indeterminate sentence is designed to keep a defendant incarcerated until such time as his release is thought not to be a threat to the public safety. It is also designed to permit of release at the time of optimum rehabilitation.

This defendant is eligible for parole on the first sentence after the expiration of three years and nine months. Parole to the outside community is impossible by reason of the consecutive sentence. If he is held to do the maximum on the first sentence, without parole, he must serve ten years—then he would start service on the consecutive sentence and would be eligible for parole on that sentence after the total expiration of thirteen years and nine months. Such a period of incarceration is in excess of the statutory period of twenty years less good time or eleven years and three months for all offenses. (Ill Rev Stats 1967, c 38, § 123-2(a) (3).) The offense here involved is subject to an indeterminate sentence with a minimum of not less than two years. (Ill Rev Stats 1967, c 38, § 18-2(b).)

The Tentative Draft (December 1967) by the Committee of the American Bar Association on Minimum Standards for Criminal Justice, in the area of Sentencing Alternatives and Procedures, after its study, concluded that consecutive sentences are "rarely appropriate." The commentary on its recommendations for action in this regard is convincing.

85

There being no basis in this record for a consecutive sentence, the same should be vacated and remanded for further proceedings, or this court, under the authority granted by Supreme Court Rule 615, should modify the sentence by deleting the requirement that it run consecutively.