THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* HAROLD LONGSTREET, Defendant-Appellant.

(No. 57950;

First District (5th Division)—October 25, 1974.

876

James J. Doherty, Public Defender, of Chicago (Robert P. Isaacson, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., Thomas D. Rafter, Perry L. Fuller, Dennis J. Horan, and Michael J. Morrissey, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DRUCKER delivered the opinion of the court:

Defendant was charged with the offense of armed robbery. (Ill. Rev. Stat. 1971, ch. 38, par. 18—2.) Following a jury trial he was found guilty and sentenced to a term of from 5 to 10 years. On appeal he contends that (1) he was not proven guilty beyond a reasonable doubt; (2) he was prejudiced by the testimony of a police investigator concerning his

prior contacts with the police; (3) he was prejudiced by the introduction into evidence of certain "mug shots" and of weapons unrelated to the offense with which he was charged; (4) he was denied a fair trial due to the failure of the State to fully comply with a discovery order; (5) he was prejudiced due to the fact that the court gave an "Allen" charge to the jury; and (6) his sentence is excessive.

At trial Henry Liese testified for the State that at 2 P.M., on September 6, 1970, he arrived at an apartment building which he owned at 3548 West Congress Parkway in Chicago. He parked his car in the alley beside the building and proceeded to the first-floor rear apartment of Mrs. Helen Anderson to collect rent. Mrs. Anderson was not home. A 13-year-old girl answered the door and then left to get the rent money. She returned approximately 15 minutes later and gave him $90 in cash for rent and utilities. While writing a receipt he heard the hood of his car go down. He returned to his car and put his key in the ignition, but it would not start. "In less than a minute" someone was alongside him. This individual opened the car door and said, "I've got a gun, give me your money, all of it." The man pointed a snub-nose gun toward his left side. Liese gave the man $154. He pointed toward the porch and told the robber, "This is all of it, ask her." He did not see anyone on the porch but he "knew they were there." He observed the man's face and stature for a "good minute" under excellent lighting conditions. The sun was shining. The man was a "good six feet" tall and wore a khaki T-shirt and blue trousers. After being robbed, he called the police. A couple of squad cars arrived. He accompanied the police officers and was shown a short man but stated that this was not the man who had robbed him. Several days later Officer Munyon, a police investigator, came to his home and showed him five or six photos. He picked out one of defendant. On September 15, 1970, he viewed a lineup of six or seven men, at which time he again identified defendant.

On cross-examination Liese testified that he had never before seen Alfreda Leach, the girl who had given him the rent money. He did not tell police officers that the robber had called out to her. He described the robber to police as being in his twenties, about 6 feet 5 inches, with natural hair and wearing blue trousers and a khaki shirt. The robber carried a snub-nose steel .32-caliber revolver. He did not tell police whether or not the robber wore a mustache.

Officer Thomas Munyon of the Chicago Police Department testified for the State that on September 8, 1970, he was investigating the armed robbery of Liese. He went to the apartment house at 3548 West Congress and interviewed Helen Anderson. She told him that she had not been at home on September 6 and had no knowledge of the robbery. He then

searched for other witnesses to the crime. Two children, about 6 or 7 years of age, directed him to go to a building about half a block east of the scene of the crime. They were Mrs. Anderson's children; however, he could not remember their first names. He proceeded to the building to which the children had pointed and spoke with Alfreda Leach. She told him that she had given Liese the rent money but did not see the robbery. She told him that there were no male members of her family living in the building. He went to the front of the building to obtain the address. It was 3527 West Van Buren. He found the name "Leach" on the mailbox and also that of Harold Longstreet. He then went to police files and "got the name of a Harold Longstreet, male Negro, date of birth, 1950, six feet three, a hundred sixty-five pounds, dark complexion." He obtained a photo of defendant, included it with six other photos of "previous offenders of robberies" and showed them to Liese. Liese identified defendant. Munyon then secured an arrest warrant for defendant. He proceeded to the Leach apartment accompanied by two other officers. Upon being admitted to the apartment, they found defendant asleep in bed. There was a metal box next to the head of the bed. Munyon opened the box and found three pistols in it. Defendant, when he awoke, put on a khaki shirt and blue pants and accompanied the officers to the police station. At the station Liese was shown the weapons that had been seized and identified a snub-nose .38-caliber revolver as the gun that had been used in the robbery. Liese then viewed a lineup and identified defendant. On cross-examination Munyon testified that defendant continually denied any participation in the robbery.

Chicago Police Officer Roger Sielinski testified for the State that on September 6, 1970, he received a robbery call to go to 3548 West Congress Parkway. When he arrived, he was given the following description of the robber: "[A] male, Negro, approximately twenty two years old, six feet tall, 165 pounds, black hair, brown eyes, medium complexion, khaki shirt and blue pants." Other police officers brought an individual to the presence of Liese. He stated that the individual was not the offender, and the man was released. On cross-examination Sielinski testified that Liese told him that a blue-steel revolver was used. Liese told him that the robber called to a woman on the porch named Alfreda and asked her "if this was all the money that he had." His report did not indicate whether or not Liese told him that the robber had a mustache.

Defendant testified on his own behalf that on September 6, 1970, he lived at 3527 West Van Buren. That morning he awoke at 9:30. His mother, Callie Lee Leach, his sisters, Alfreda Leach and Peggy Joe Leach, his brother, Frank Sam Leach, his cousin, James Patt, and Patt's fiancee, Helen Anderson, were present. He put on blue levis and a red

T-shirt and before 11 o'clock he went to the garage of Walter Patrick, located in the 3300 block of Flournoy. He went alone. Patrick showed him how to work on an automobile's transmission, and he then remained there until approximately 7 P.M. When he returned home, the same people were still at his apartment. The box in which the pistols were found did not belong to him. The box had a lock on it. On September 6 he wore a mustache. He did not hold up Liese.

Walter Patrick testified for the defense that on September 6 defendant came to his place at approximately noon in order to repair the drive shaft or transmission of a car that was in his garage. Defendant remained there until at least 7 P.M.

Melvin Abercromby testified for the defense that the box in which the guns were found had been pawned to him. He placed the box in the apartment in which defendant was residing. The box had been locked, and he did not have a key. On September 6 the police showed him to a man who was sitting in a squad car, but the man told the police that Abercromby was not the one he was looking for.

Alfreda Leach testified for the defense that she lives at 3539 West Van Buren. On September 6, 1970, she paid the rent to Liese. She did not see anyone rob him nor did she hear anyone call, "Alfreda, does he have any more money?" On cross-examination she testified that defendant did not leave home to go to Mr. Patrick's garage until after she had returned from paying the rent.

OPINION

Defendant contends that the State failed to prove him guilty beyond a reasonable doubt. He maintains that Henry Liese contradicted himself on three "significant" matters in that he (1) failed to notice whether or not the robber wore a mustache, (2) did not testify at trial that the robber called out to Alfreda Leach despite earlier statements to the police to that effect, and (3) was mistaken in his description of defendant's complexion.

■■ The rule is well established that "[i]t is within the province of the jury to judge the credibility of witnesses, weigh the testimony and determine matters of fact. The determination of the jury will not be disturbed unless the evidence is so unsatisfactory as to justify a reasonable doubt of guilt." (*People v. Benedik*, 56 Ill.2d 306, 310, 307 N.E.2d 382; *People v. Zuniga*, 53 Ill.2d 550, 293 N.E.2d 595; *People v. Hairston*, 46 Ill.2d 348, 263 N.E.2d 840.) "The testimony of a single witness, if it is positive and the witness credible, is sufficient to convict even though it is contradicted by the accused." (*People v. Hampton*, 44 Ill.2d 41, 45, 253 N.E.2d 385.) In the instant case Liese was able to observe the

individual who was robbing him for a "good minute" under excellent lighting conditions. He described the robber as being a Negro about 22 years of age, over 6 feet in height, 165 pounds in weight, and carrying a .32-caliber blue steel snub-nose revolver. Police records indicate that defendant is a black male who stands 6 feet 3 inches and weights 165 pounds. On September 6, 1970, he was 20 years old. At the time of his arrest a snub-nose .38-caliber revolver was seized. Liese positively identified defendant on three occasions, first when he was shown a group of photographs by a police investigator, later at a lineup, and once again in court. He identified the .38-caliber revolver as the weapon used in the robbery. Key portions of his testimony were corroborated by that of Officers Munyon and Sielinski. Contrary to defendant's contention that Liese was an unreliable witness, we find that his testimony failed in only minor respects. We therefore hold that the evidence was sufficient to prove defendant guilty beyond a reasonable doubt.

Defendant next contends that prejudicial error resulted from the testimony of Officer Munyon concerning the investigatory procedures which led to his arrest. Specifically, defendant points to Munyon's statements concerning his listing in the police "alpha" file and his photograph being included in a group of those of "prior offenders." He argues that this testimony contains improper references to his prior unrelated criminal acts.

■■ During the course of his testimony Munyon stated that he found defendant's name on the mailbox at the Leach residence. The State's attorney then asked him:

"Q. Okay, what did you do next?

A: I went to the alpha file.

Q: Before we go into that, briefly describe to the ladies and gentlemen on the Jury what the alpha files are.

A: It is an alphabetical listing of any persons who has [sic] had contact with the police department.

Mr. Yonan [defense counsel]: Judge, I am going to object to this

The Witness: A. (continuing)—either victim or—

Mr. Yonan: Judge, I object to this.

The Court: Sustained."

Munyon did not testify further on this matter. It is clear, from a review of this colloquy, that Munyon's testimony did not refer to the commission of prior unrelated criminal acts by defendant and therefore he suffered no prejudice.

Munyon also testified that the photographs he showed Liese were of "people that my unit has arrested for robberies or unlawful use of

weapons, carrying a gun in the street." Defendant claims that the trial court's failure to sustain his objection to this testimony constitutes prejudicial error.

■■■ "Although evidence of other offenses is ordinarily inadmissible, a recognized exception to the general rule exists where the evidence tends to aid in the identification of the accused as the person who committed the particular crime charged." (*People v. Lewis*, 30 Ill.2d 617, 621, 198 N.E.2d 812.) Thus, even though "a prior criminal record may be inferred from the use of police photographs, their admission into evidence or testimony in reference thereto, is not error per se." (*People v. Coleman*, 17 Ill.App.3d 421, 431, 308 N.E.2d 364.) We believe that Munyon's brief mention of the source of the photographs directly related to the issue of the identification of defendant and, consequently, fell within the rule enunciated in *Lewis*. The State made no attempt during the course of trial to elicit further testimony concerning defendant's prior unrelated criminal activities nor did the assistant State's attorneys mention these matters during closing argument. In addition, we note that the court ordered that the police numbers be trimmed from the photos before they were introduced into evidence. Therefore, Munyon's testimony cannot be considered as prejudicial error.

Defendant further contends that it was error to introduce into evidence this group of 11 mug shots since Munyon testified that he had shown only 6 photos to the complaining witness. Defendant's specific complaint is that the sole purpose of the State in introducing these photos was to bring attention to the fact that he had a police record.

■■ In general, police mug shots are not held to be prejudicial as constituting evidence of other offenses where they are relevant to the issue of identity. (*People v. Maffioli*. 406 Ill. 315, 94 N.E.2d 191; *People v. Smith*, 20 Ill.App.3d 756, 314 N.E 2d 543; *People v. Coleman; People v. Bleimehl*, 9 Ill.App.3d 273, 292 N.E.2d 60.) Although we view with disfavor the State's introduction of some photos which were not shown to Liese when he made his initial identification of defendant, we believe that this rule is clearly applicable in the instant case. The capability of Liese to identify defendant was at issue. It is undisputed that the photos actually shown to the complaining witness had been drawn from the group of 11 ultimately introduced into evidence. Moreover, as noted above, the trial court attempted to disguise as much as possible the fact that the photos in question were taken from police files. Their introduction did not unfairly prejudice defendant.

Liese testified that a single weapon, a snub-nose blue-steel small-bore revolver, was used in the robbery. Defendant claims that the introduction of an automatic and a large-bore revolver seized at the time of his

arrest, in addition to the gun identified by Liese, constitutes prejudicial error.

■■ It has long been the rule that "even though no claim is made that the accused used [the particular] weapon in committing the particular crime, the weapon may be the subject of testimony concerning the details of the arrest *and also be admitted into evidence. People v. Lenhardt,* 340 Ill. 538; *People v. Durkin,* 330 Ill. 394; *People v. Dale,* 355 Ill. 330. Cf. *People v. Smith,* 413 Ill. 218." (Emphasis supplied.) (*People v. Jackson,* 9 Ill.2d 484, 492, 138 N.E.2d 528, 532.) Thus, for example, in *People v. Moore,* 42 Ill.2d 73, 246 N.E.2d 299, the supreme court rejected a claim similar to that raised by defendant where a revolver seized at the time of the accused's arrest was shown to a jury even though no testimony linked it to the commission of the crime for which he was being tried, and in *People v. Trice,* 127 Ill.App.2d 310, 262 N.E.2d 276, a starter's pistol found in the possession of the defendant when he was arrested was ruled to have been properly placed in evidence despite the fact that it was never alleged that he had used the gun. The record before us reveals that Officer Munyon discovered the weapons in question in a metal box located at the head of defendant's bed during the course of a search incident to his arrest, and therefore we find that it was not error to allow them to be introduced into evidence.

Defendant next claims that the State's failure to inform him of the identity of occurrence witnesses as requested in his discovery motion and subject to the court's compliance order denied him his right to a fair trial. In addition, he asserts that the State compounded its error by including prejudicial comments with regard to these witnesses in its closing argument. Initially it is defendant's contention that although his discovery motion requested a list of occurrence witnesses who would not be called by the prosecution, the State failed to supply him with the names of two small children who had been interviewed by Officer Munyon.

■■■ We have recently held that "there is no * * * constitutional requirement that the prosecution make a complete and accurate accounting of all police investigatory work. (*Moore v. Illinois,* 408 U.S. 786.) * * * [F]or prejudice to lie, the evidence must be both material and favorable to the defendant. This is true even if evidence is suppressed over defendant's motion for production." (*People v. Bracy,* 14 Ill.App.3d 495, 502, 302 N.E.2d 747.) There is here no allegation that the State failed to disclose evidence material to his case on the issues of criminal culpability or punishment. Moreover, our Supreme Court Rules do not require that the names of occurrence witnesses be made known to a defendant. Rather, they grant the right to a defendant only

to "the names and last known addresses of persons whom the State intends to call as witnesses." (*Supreme Court Rule* 412 (a) (i); Ill. Rev. Stat. 1971, ch. 110A, par. 412(a)(i).) In fact, contrary to defendant's assertion, there is no indication in the record that these children were occurrence witnesses. Before the grand jury, Munyon merely testified that "I have obtained the description [of defendant] from two kids." At trial he testified only to the fact that when he interviewed Helen Anderson's 6- or 7-year-old children about the robbery, they pointed toward the Leach residence. Since their mother was apparently a friend of defendant and his family, it seems likely that the children would know of defendant's activities even though they may not have witnessed the crime. Although defendant claims that the State violated the prescriptions of *Giglio v. United States,* 405 U.S. 150, and Supreme Court Rule 412(f) (Ill. Rev. Stat. 1971, ch. 110A, par. 412(f)),* he admits that the record reveals that Munyon did not make a note of the children's names while he was conducting his field investigation nor could he remember them at trial. Clearly, the State is not obliged to reveal to a defendant information its investigators have not compiled. Defendant has argued that the failure of the State to disclose the names and address of the Anderson children violated the trial court's compliance order. The court, however, ruled that the State acted in accordance with its orders and, there being no violation of a constitutional or statutory requirement, we find no merit in his claim.

■■ Defendant also contends that he was prejudiced by the State's closing argument. We note that in his closing argument defense counsel commented on the failure of the State to call the two Anderson children to testify. The assistant State's Attorney stated in reply that "with regard to little children which counsel has brought up in this case, counsel is further well aware that six and seven year old children cannot be witnesses in court by law." We are, of course, aware that the rule, properly stated, is that a child is not absolutely precluded from testifying but rather is presumed incompetent to testify until the trial judge determines his competency. (*People v. Ballinger,* 36 Ill.2d 620, 225 N.E.2d 10.) However, we believe that coming in response to defense counsel's closing argument, and in view of the weight of the State's case, this slight misstatement of the rule did not prejudice defendant. *Cf. People v. Bracy.*

---

* Supreme Court Rule 412(f) provides that:
  "The State should ensure that a flow of information is maintained between the various investigative personnel and its office sufficient to place within its possession or control all material and information relevant to the accused and the offense charged."

After the jury deliberated over three hours, the court, on its own motion, gave the following instruction:

> "Ladies and gentlemen of the Jury, in a large proportion of cases absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of others, yet you should examine the questions submitted with proper regard and deference for the opinion of each other and you should listen to each other, listen to each other's opinions with a disposition to be convinced. It is your duty to decide the case if you can conscientiously do so. If you should fail to agree on a verdict, this must be retried and any further jury must be selected in the very same manner and from the very same source as you have been chosen, and there is no reason to believe that the case would ever be submitted to twelve men and women more competent to decide it than you or that the case can be tried any better or more exhaustingly than it has been in this Courtroom or that more or clearer evidence could ever be produced on behalf of either side."

Defendant, calling this instruction an "Allen" charge, contends that it placed "unfair pressure on those jurors in the minority and that its effect was to coerce a hung jury into reaching a verdict."

■■ In *People v. Hairston*, 10 Ill.App.3d 678, 687, 294 N.E.2d 748, it was noted that "[t]he usual criticism of an 'Allen' charge (*Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154), centers on language which urges those in the minority on the jury to re-evaluate their positions, giving consideration to the fact that the majority of the jury heard the same evidence, yet took a different position." The instruction given in the instant case does not contain such language, and therefore it was not improper in that respect. Moreover, in *People v. Prim*, 53 Ill.2d 62, 289 N.E.2d 601, our supreme court was confronted with an instruction containing language almost identical to that in the case before us, and the same issue of prejudice was raised. While the court did not encourage the use of such an instruction, it concluded that its giving had not prejudiced the accused. We believe that under the facts of the instant case defendant was not prejudiced by the giving of the challenged instruction.

■■ Defendant's final contention is that his sentence of from 5 to 10 years is excessive. Although the term falls within the limits prescribed by the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—1), he urges that we exercise our discretionary power to reduce his sentence. With regard to sentencing, the trial judge, who has the opportunity during the course of the trial and the hearing in aggravation and mitigation to make a sound determination as to the punishment

to be imposed, occupies a position superior to that of an appellate tribunal. Therefore, we will not disturb a sentence imposed by the trial judge unless it constitutes a great departure from the fundamental law and its spirit and purpose, or is out of proportion to the nature of the offense. (*People v. Schmidt*, 10 Ill.2d 221, 139 N.E.2d 726; *People v. Taylor*, 33 Ill.2d 417, 211 N.E.2d 673; *People v. Collins*, 21 Ill.App.3d 800, 315 N.E.2d 916.) These principles have not been violated in the case at bar.

For the foregoing reasons the judgment entered below is affirmed.

Affirmed.

SULLIVAN, P. J., and BARRETT, J., concur.