THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. TERRY LEE SIEVERS, Defendant-Appellant.

Fourth District   Nos. 14097, 14196 cons.

Opinion filed February 7, 1978.

CRAVEN, J., dissenting.

Richard J. Wilson and Edward R. Green, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Robert C. Perry, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

The prime issues: *modus operandi* and identification.

Do they permit evidence of other offenses committed by the defendant?

We hold in the affirmative.

Terry Sievers was charged by information with the September 21, 1975, rape of Terri Lee Scott in Champaign, Illinois. He was convicted by a jury and sentenced to serve 5 to 15 years' imprisonment.

Under a subsequent information Sievers was charged with the November 30, 1975, armed robbery and armed violence of Marcia Elble. After another jury trial, he was convicted and sentenced to 5 to 15 years in prison for armed robbery, to run consecutively to his prior rape sentence.

(On our own motion these cases have been consolidated for opinion as our cases numbered 14196 and 14097, respectively.)

RAPE CASE. At the first trial, Terri Lee Scott (age 16) testified that on the Sunday morning of September 21, 1975, she was visiting friends in Champaign and was out walking in search of a grocery store. On several occasions she noticed a blue Chevy Nova following her. As she approached the IGA store, she observed the Nova park in the store's parking lot. A man she recognized as the driver of the car then approached her, grabbed her by the arm, drew a knife and pulled her away from the street toward an adjoining cornfield. In a grassy area between the field and the street he threw her down, sat on her and held his hand over her mouth to muffle her screams. The man ripped off her clothes and fondled her breasts and crotch. The man forcibly had intercourse with the prosecutrix for about 30 seconds. He then got up and told her to walk south while he walked north towards the IGA.

Miss Scott started south but turned and headed toward the IGA when she heard the man's car leave. At the store, she called the police, made a complaint, and gave a description of her attacker. While scanning a group of photos during her second trip to the police station, she identified Sievers as the man who raped her.

ARMED ROBBERY CASE. Marcia Elble, a University of Illinois student, testified at the second trial that she was attacked on Sunday, November 30, 1975, shortly after 11 a.m., while walking between Weston Hall and Garner Hall dormitories. A man came up behind her, grabbed her arm, stuck a sharp object in her back, and told her it was a holdup. She was then backed up against the Garner cafeteria doors and faced the man as he held a knife to her ribs. After giving him $9, Elble pushed the man and tried to get away. The man grabbed her once again, said he wanted her body, put his hand up her skirt, and told her if she cooperated it would not be so hard. Elble pushed him again and ran toward the intramural building. There she reported the attack and was taken by the police to the police station where she drew a sketch of her attacker.

In both cases the trial court admitted testimony concerning attacks on other University of Illinois students expressly for consideration on the issue of defendant's identification and design. Sievers asserts this testimony was erroneously admitted because the character of these assaults was not sufficiently similar to the offense against the complainants to establish *modus operandi.*

■■ Although evidence of extra-indictment offenses is not generally

admissible, evidence of other crimes which goes to show motive, intent, identity or *modus operandi* is an exception. (*People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Palmer* (1970), 47 Ill. 2d 289, 265 N.E.2d 627.) In *McDonald* our supreme court found there was no error in admitting a prosecution witness' testimony that she had experienced an attack similar to the one encountered by the complainant. Similarities in the two attacks in *McDonald* included the early morning time, the entrance gained by removing a window screen and standing on an overturned refuse basket, the manner of attack upon a female victim, and the intruder's apparel of gym shoes, khaki pants, and gloves.

In all four attacks allowed into evidence in the rape case before us, the assailant was a tall, thin young man with long blonde hair. He approached the young female victim on foot while they were walking down a sidewalk and began the sexual assault by fondling or attempting to fondle the victim. Similarities between the attack on the Scott girl and two of the other attacks are that the attacks occurred on a Sunday morning and the attacker used a knife.

In addition to the similarities shared by all four attacks, the attack in our armed robbery case and the two other attacks allowed into evidence all involved a robbery preceding a sexual assault, an attacker announcing his sexual intent, and attacks occurring on the University campus during a two-week span. Similarities between the attack on Miss Elble and one of the two other attacks are that the attacker wore a blue down-filled jacket, the attacker used a knife, and the attack occurred on Sunday morning.

■■ Since "peculiar and distinctive features" are common to the attacks, the trial court did not abuse its discretion in admitting the testimony on the issue of identification and design. (*People v. Therriault* (1976), 42 Ill. App. 3d 876, 356 N.E.2d 999.) The testimony was also proper in view of the holding of *People v. Dewey* (1969), 42 Ill. 2d 148, 246 N.E.2d 232, and *People v. Cole* (1963), 29 Ill. 2d 501, 194 N.E.2d 269, that evidence of other offenses is admissible if relevant for any purpose other than to show a propensity to commit a crime.

Sievers' alibi defense in both cases raised the identity issue. In the rape case Sievers contended that he was not in Champaign the morning of September 21 because he had been hunting near Hugo with his wife and Dennis and Carla Vail at the time Miss Scott was raped. Defendant's story was corroborated at the trial by his wife, Dianne, and Dennis and Carla Vail.

At the armed robbery trial Sievers claimed he was also hunting on the day of the November 30 attack. His wife testified that she had gone hunting with him, and his mother stated he was in bed when she left her home at 9 a.m. and that she saw him when she got home at 12 noon. At the second trial, defense counsel extensively questioned defendant and

another witness concerning the discrepancy between Sievers' hazel or brown eyes and the blue eyes of their attacker that the witnesses reported to the police. Since the defendant's identity was in issue, evidence of other crimes—whose characteristics yielded a distinct and unique combination when considered together and viewed *in toto*—was properly introduced to establish this element.

■■ Sievers' counsel also objected to the introduction into evidence of the knife that was in Sievers' possession at the time of his arrest. In *People v. Ostrand* (1966), 35 Ill. 2d 520, 221 N.E.2d 499, *overruled on other grounds in People v. Brocey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685, the court ruled that where there is evidence indicating that an accused possessed a weapon at the time of the offense, a similar weapon found in his possession at time of arrest may be admitted against him. An identification of the weapon as the one actually used in the commission of the offense is unnecessary. Likewise, the court in *People v. Longstreet* (1974), 23 Ill. App. 3d 874, 320 N.E.2d 529, admitted an automatic pistol and a large bore revolver in addition to the snub-nosed blue-steel small bore revolver identified by the victim as the robbery weapon. Therefore, even though the present victims stated that the knife used was different than the one found in Sievers' possession this testimony only affects the probative value and not the admissibility of the similar weapon into evidence.

■■ Defendant next claims the trial court erred in the armed robbery case in allowing evidence that Dianne Sievers had attempted to smuggle hacksaw blades to her husband while he was in jail. The record indicates, however, that this testimony was admitted to show bias and interest on the part of the witness. It would seem clear that a witness may be impeached in a criminal case by showing bias or interest in the outcome of the trial because it is pertinent to the credibility of that witness. (*People v. Sawyer* (1971), 48 Ill. 2d 127, 268 N.E.2d 689; *People v. Henson* (1975), 32 Ill. App. 3d 717, 336 N.E.2d 264.) Since the record clearly reflects that this was the precise reason that the testimony was admitted here, there was no error.

■■ Sievers further claims that in the second trial the court abused its discretion in imposing consecutive sentences because he had no prior criminal record. First of all, it is hornbook law that the imposition of consecutive sentences is within the trial court's discretion. (*People v. Ledferd* (1968), 94 Ill. App. 2d 74, 236 N.E.2d 19; *People v. Sykes* (1973), 10 Ill. App. 3d 657, 295 N.E.2d 323.) And a trial court may properly impose a consecutive sentence if the nature and circumstances of the offense—and the history and character of the defendant—warrants such a sentence to protect the public from further criminal conduct by the defendant. (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—4(b).) In reaching

his decision that a consecutive sentence was necessary to protect the public, the trial judge below discussed the statutory factors and obviously considered the facts of the case. Sievers had robbed his victim at knifepoint in the daytime and demonstrated by word and action his sexual intentions. He had been convicted of a rape committed under similar circumstances approximately two months before the armed robbery offense. Since there is substantial basis in the record supporting the trial court's judgment that a consecutive sentence was necessary for the public's protection, we find no abuse of discretion.

■■ Sievers next contends that his convictions must be reversed because he was not charged by indictment and did not waive his right to be so charged. This argument is unpersuasive since a defendant has no right to be charged by indictment rather than by information, as we held in *People v. Tibbs* (1977), 46 Ill. App. 3d 310, 360 N.E.2d 993. We considered this issue in depth in *Tibbs* and rejected the argument. We again subscribe to our position as enunciated in *Tibbs*.

■■ Defendant's final claim is also without merit. He contends that section 111—2(a) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 111—2(a)) is unconstitutional since it fails to set forth intelligible standards to guide the application of legislative authority. The court in *People v. Vaughn* (1977), 49 Ill. App. 3d 37, 363 N.E.2d 879—which we cited with approval in *People v. Ferguson* (1977), 54 Ill. App. 3d 886, 368 N.E.2d 170—noted that the powers exercised by a state's attorney are executive powers. Consequently, there is no invalid delegation of legislative authority in permitting a state's attorney to select the vehicle of prosecution.

For these reasons, we affirm the lower court in both cases.

Affirmed.

TRAPP, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

It was prejudicial error to permit evidence of other crimes to be introduced for the apparent purpose of proving guilt of the charged offense. Such procedure deprived the defendant of a fair trial and I would reverse and remand for a new trial.

In cause No. 14196, involving the alleged rape of Terri Lee Scott, the trial court permitted the testimony of three other alleged victims wherein they testified to attacks made upon them. The defendant contends, and I agree, that this proof of other crimes was irrelevant and highly prejudicial, notwithstanding the proper limiting instruction.

It tended to show defendant's propensity to commit crimes of an

aggressive, sexual nature. Of course, as a general rule, evidence of other crimes is inadmissible. (*People v. Gregory* (1961), 22 Ill. 2d 601, 177 N.E.2d 120; *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) However, an exception to this rule exists where the evidence serves to place defendant in proximity to the time and place, aids or establishes identity, or tends to prove design, motive or intent. *People v. Romero* (1975), 31 Ill. App. 3d 704, 334 N.E.2d 305, *affirmed* (1977), 66 Ill. 2d 325, 362 N.E.2d 288; *People v. Tranowski* (1960), 20 Ill. 2d 11, 169 N.E.2d 347, *cert. denied* (1960), 364 U.S. 923, 5 L. Ed. 2d 262, 81 S. Ct. 290; 368 U.S. 978, 7 L. Ed. 2d 440, 82 S. Ct. 484.

Yet the exception is not to be applied mechanically whenever the evidence of other crimes serves to prove or establish one of the categorical exceptions to the rule. It is the court's responsibility to determine whether the evidence is sufficiently probative of an issue in the present case to outweigh the obvious prejudicial effect of disclosing this evidence to the jury. (*Romero.*) In order to engage in the required discretionary balancing act, the court must consider the other evidence in the case in order to assess the need for admitting prejudicial evidence of other crimes. As was stated by the Washington Supreme Court in *State v. Goebel* (1950), 36 Wash. 2d 367, 218 P.2d 300, "[T]his class of evidence, where not essential to the establishment of the state's case, should not be admitted, even though falling within the generally recognized exceptions to the rule of exclusion, when the trial court is convinced that its effect would be to generate heat instead of diffusing light, or * * * where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." 36 Wash. 2d 367, 379, 218 P.2d 300, 306.

I concur in the Washington court's thinking on this subject and emphasize that here, unlike in the case where there is entirely circumstantial evidence or no positive identification by the victim, it would not have been necessary for the State to parade in three victims of other assaults for which defendant has not yet been prosecuted. Notwithstanding the limiting instruction which was given, this procedure still has the effect of placing defendant on trial for four offenses rather than one. Naturally, the more offenses which the jury hears the defendant has committed, the more likely they will be to convict him of the present charge. Despite any limiting instructions, defendant's propensity to commit crime threatens to become the issue of focus rather than proof of guilt in the case at trial.

Here, the trial court admitted the evidence of three separate, unconnected sexual assaults on the theory that they could show identification of the defendant or common design. Clearly, identification of the defendant was in issue here because he presented an alibi as a defense. Does this mean that any time a defendant raises alibi as a defense

the State may produce witnesses who can identify defendant as the perpetrator of similar crimes either prior to or subsequent to the present charge? I would oppose such a broad interpretation of the identification exception subscribing to the views expressed in *People v. Butler* (1975), 31 Ill. App. 3d 78, 334 N.E.2d 448. As the appellate court said in *Butler*, where the evidence falls into one of the exceptions, *i.e.*, identity, and there is ample eyewitness testimony to establish in the instant case, it is error to allow witnesses to recapitulate the details of defendant's prior criminal acts in order to prove identity.

The testimony of the three other girls here did not establish a common design or *modus operandi*. Under Professor McCormick's view, evidence of other crimes is admissible to prove common design if the device used is "so unusual and distinctive as to be like a signature." (McCormick, Evidence §190(3), at 449 (2d ed. 1972).) While it is clear that nothing about these four attacks was so distinctive as to amount to a "signature" under the McCormick test, the cases indicate that Illinois courts may have taken a less restrictive approach towards admission of such evidence. *Romero* said that "[i]n order to be admissible on the issue of common design the evidence of another offense must come within the requirement of being substantially similar and have *common features* with the offense charged. (*People v. Tranowski*, 20 Ill. 2d 11; *People v. Lehman*, 5 Ill. 2d 337; 2 Wigmore on Evidence, §304 (3d ed. 1940).)" (Emphasis added.) (31 Ill. App. 3d 704, 709, 334 N.E.2d 305, 309.) After reading *Tranowski* and *Lehman*, I do not agree that those cases stand for such nonrestrictive requirements on the use of such evidence. *Lehman* speaks of "peculiar and distinctive features common to" (5 Ill. 2d 337, 343, 125 N.E.2d 506, 509), while *Tranowski* spoke of "a scheme or design which was strikingly similar" (20 Ill. 2d 11, 16, 169 N.E.2d 347, 349). It seems that the evidence of another crime must be "strikingly similar" or "peculiar and distinctive" in order to be admissible under the exception; merely finding substantial similarity or common features will not suffice. For example, here the victim and the three other witnesses who were attacked all indicated that the attacker began his assault by fondling or attempting to fondle their breasts or genital areas. While this is a common feature, it is far from being distinctive in crimes of this nature.

Upon comparison, the accounts of the four attackers under consideration here contain glaring dissimilarities. Terri Scott was stalked, not on foot like the others, but by a man who followed her in his automobile until he reached a suitable location to assault her. Here Miss Scott was raped on the west edge of Champaign, several miles from the University of Illinois campus area in which the other three attacks took place. In only two of the four incidents was the attack preceded by robbery while in only three of the four did the attacker use a knife. With

these factors in mind, the common design exception has not been met. In view of the highly prejudicial nature of such evidence, we believe that its admission here was reversible error. It can be argued that the defendant was charged with one offense, tried for four, and convicted of propensity to commit sex offenses.

Further, I believe there was error in the admission of the knife found in defendant's possession. The victim told the police that the knife was not even similar to the one used by her assailant, and I know of no rule that permits a weapon that is specifically described as totally unlike one used in the commission of an offense to be admitted at the time of the trial for that offense.

While this dissent has focused upon the issues in cause No. 14196, the error with reference to cumulative testimony purported to establish continuing criminal propensity is repeated in cause No. 14097. These cases should be reversed and remanded for a new trial free of the prejudicial error.