THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEOFFREY FREEMAN, Defendant-Appellant.

First District (3rd Division)   No. 84—0743

Opinion filed October 21, 1987.

RIZZI, J., specially concurring.

Sue Augustus, of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr., and Bonnie Meyer Sloan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant Geoffrey Freeman was charged by information with three counts of murder (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(1), (a)(2), (a)(3)), one count of armed robbery (Ill. Rev. Stat. 1979, ch. 38, par. 18—2), and other offenses. After a jury trial on the murder and armed robbery charges, defendant was convicted of both offenses. A death penalty sentencing hearing was held. The jury did not reach a unanimous verdict on the death penalty. The trial court thereafter sentenced defendant to natural life imprisonment. Defendant then filed a notice of appeal. The State Appellate Defender was appointed to represent defendant on appeal and has filed a brief on his behalf. Defendant has filed a *pro se* brief raising additional issues on appeal.

Defendant and his counsel raise the following contentions on appeal: (1) the "Witherspooning" of prospective jurors during *voir dire* questioning resulted in the selection of a jury which failed to represent a fair cross-section of the community and which was biased in favor of the prosecution; (2) defendant was denied his right to an impartial jury drawn from a fair cross-section of the community where the State used its peremptory challenges to exclude black citizens solely on the basis of race; (3) Cook County, being a "home rule" unit, does not have the power to define and provide for the punishment of a felony; (4) the trial court erred in not granting defendant's motions to quash arrest and suppress evidence; (5) the trial court erred in not granting defendant's motion to dismiss the information; (6) the trial court erred in denying defendant's motion to waive his presence for a part of trial; (7) the trial court erred in denying defendant's motion to subpoena the employment records of certain police officers; (8) the testimony of Sylvia Allen was improperly given as a result of monetary compensation provided her by the prosecutor; (9) defendant suffered prejudice as a result of the prosecutor's excessive references, during opening and closing statements, concerning the deceased's family members, where such references were made solely to inflame

the passion of the jury; (10) the trial court erred in not granting a mistrial based on pretrial publicity of the case; (11) the trial court erred in allowing a juror to remain on the jury after he was contacted by someone who claimed to represent the Cook County sheriff's office; (12) the trial court erred in allowing various instructions to be tendered to the jury over defendant's objections; (13) the trial court erred in denying defendant's motion to dismiss his attorney; (14) the trial court erred in failing to order that defendant be examined by a psychiatric expert; and (15) the trial court erred in denying defendant's motion to dismiss and discharge, where the State proceeded against defendant on a burglary charge solely as a means of securing a conviction to use in aggravation against defendant on the murder charge.

For the reasons stated below, we remand this matter with instructions to the trial court.

The evidence at trial indicated the following. On January 22, 1981, at about 5:30 p.m., the victim, 71-year-old Madeline Mullennix, was driving her automobile from Frankfort, Illinois, to her home in Blue Island, Illinois. A short time before, Madeline's two sons, Charles and Vernon, had purchased a house for their mother in Frankfort. Madeline was staining some kitchen cabinets at her new house just before leaving. Before she left the Frankfort house, Madeline told her son Charles, who was at the house with her, that she was going to stop for a sandwich at 147th and Kedzie on her way home.

The next day, Friday, January 23, Charles Mullennix attempted unsuccessfully to reach his mother on the telephone. He called a cousin who had a key to his mother's apartment in Blue Island. Charles and his cousin met, entered the apartment, and found that Madeline had not been home. Charles then called his brother and the Blue Island police. Charles and Vernon began looking for their mother and her car, a 1978 Ford Thunderbird. They took different routes between Frankfort and Blue Island and also looked in surrounding areas. They were unable to locate Madeline or the car on Friday or after continuing their search the next day.

On Sunday, January 25, Vernon resumed his search and saw his mother's car parked on Halsted Street in front of a grocery store. Vernon got the license plate number of the car and circled the block three times. After he circled the third time, the car was gone. At trial Vernon testified that he had not approached the car since he was on crutches and was afraid. The license plate number on the car, number ZT906, was not his mother's license number. Vernon went to the Calumet Park police station and reported the license number he saw on

the car. The license plates were registered to Jack Burke, who lived at 124th and Perry. Vernon went to that location but did not see his mother's car.

On Monday, January 26, Vernon and Charles went to the Kensington police station, and agreed to meet a squad car at 124th and Perry. On the way there, the brothers found their mother's car parked at 123rd and Lafayette. They informed police. The brothers were certain the car was their mother's since it had a distinctive Swedish bumper sticker and a broken louver on it. The license-applied-for sticker on the front windshield had defendant's name on it. Madeline Mullennix' Blue Island sticker was no longer on the car. The police broke into the car and recovered an umbrella, a cane, some clothing, and a key chain. The umbrella and key chain belonged to Madeline. A vest was found with defendant's driver's license inside it. Additionally, a bullet was found in the armrest of the right front door, and another bullet was found under the right front seat. Police also found reddish stains which appeared to be blood on the right front lower portion of the door, on the right front seat, on the side of the seat, and on the carpeting between the door and the seat.

Police officers Murphy and Tracy had been instructed to go to 115th and Normal Street to meet defendant on the afternoon of January 26. When the officers arrived at that location, defendant approached them and said, "I'm Geoffrey Freeman. You're looking for me?" Defendant was arrested and read his *Miranda* rights, which defendant indicated he understood. Defendant told Murphy he had purchased the car from a man for $2,500. The officers then drove defendant to 123rd and Lafayette. Murphy told defendant he thought defendant had lied about the car. Defendant admitted he lied, and then said, "Andrew Burke killed the old lady" who owned the car. Defendant told Murphy that Burke worked at the Secretary of State's office. Murphy went to that office and arrested Burke. Defendant also told Murphy where the murder weapon could be found. Murphy recovered the gun, which had two expended cartridges, and a holster from a duct in the basement of a house at 124th and Perry. Defendant thereafter directed police officers Darling and Tracy to Madeline Mullennix's body, which was located in a field at 134th and Maryland.

Darling spoke with defendant and told defendant that his story did not make sense. Defendant again admitted that he lied. Defendant then told police the following. Andrew Burke had picked up defendant in the Thunderbird on Thursday and they drove around for a while. Burke then drove to 134th and Maryland and pulled a woman out of the trunk. The woman was still alive then, and Burke dragged her

into the bushes and shot her.

After defendant finished his account of the events, he was taken to the Fifth District police station. Later that day, Darling recovered from a house at 12415 South Stewart two license plates registered to Madeline Mullennix and a pair of blue jeans belonging to defendant. Defendant had been staying at the house on Stewart Street with Derrick Allen, who resided there.

On Monday, January 26, police officer McGuire and his partner picked up Andrew Burke at the Fifth District police station and went to Area 2 Violent Crimes, where they placed Burke in an interview room. Defendant was in a separate interview room at the station. McGuire and his partner spoke with defendant in the interview room. They advised defendant of his *Miranda* rights. Defendant responded that he understood his rights and would talk with the officers. McGuire told defendant that he knew what defendant had told Officers Murphy and Darling. Defendant then told McGuire and his partner essentially the same story he had told the other officers.

After McGuire spoke with defendant, he went to the other room and interviewed Burke. McGuire then returned to the room where defendant was sitting and told defendant what Burke had told him, and asked again what had happened. Defendant told McGuire generally the same story he had told him before.

McGuire then called the State's Attorney's office. Assistant State's Attorney Farrell came to the police station and interviewed Burke. Farrell then spoke to defendant, after first advising him of his *Miranda* rights. Defendant stated that he understood his rights and would speak to Farrell. Defendant told the same story he had related before. Farrell told defendant that he did not believe him. Defendant responded that it was the truth.

Farrell then brought Burke into the room where defendant was being questioned. Burke told defendant the same story that Burke had told Farrell before. Farrell then spoke again to defendant, outside of the presence of Burke, and defendant indicated the following. Defendant had obtained the gun that was used to kill the victim, since he and Burke were going to steal a car. There were two shells in the gun. He and Burke were together in a car. Burke was driving and defendant was in the passenger seat. They saw Madeline Mullennix's car near a restaurant and waited for her to drive away. They followed her to an area of a street that was relatively dark. Then Burke rammed the victim's car and feigned an accident in order to get her to stop the car so they could steal it. The victim did not stop immediately, but eventually she did.

Defendant got out of the car and approached the driver's side of the victim's car. He was talking to the victim when Burke came up to the car and pulled open the driver's-side door. Burke then instructed defendant to pull out the gun. The victim was holding on to the steering wheel. Burke pulled her left arm away. Mullennix then started blowing the horn with her right arm. Burke reached in and took hold of her right arm and pulled her body towards the car door. Burke told defendant to pull out the gun. Defendant took the gun out of his waistband and held it about waist high. Defendant stated that his body then "banged up" against the gun, and the gun discharged accidentally. The bullet struck the victim in the left side of the chest.

Defendant indicated that Burke then pushed Mullennix toward the passenger side of the car. Mullennix was still alive at that time. Burke told defendant to drive the victim's car, and to follow Burke, who was driving his own car. Defendant stated that he wanted to leave the victim and her car near a hospital that they had passed, since she was badly injured. Burke, however, told defendant to keep following him, and defendant did so.

Defendant and Burke drove to 134th and Maryland. Burke then approached the car that defendant was driving and told defendant that they would leave the victim there. Burke handed defendant the gun and told defendant to shoot the victim again. Defendant told the police that he knew he had only one bullet left in the gun at this time and that he intended to shoot the gun at the passenger window. Just as he was about to shoot the gun, Burke noticed that defendant intended to fire the gun out the window. Burke stated, "You have to kill her," and slapped defendant's right hand, causing the gun to discharge and the bullet to strike the victim in the head. Defendant and Burke then took the victim's body out of the car and put it in the vacant lot. Defendant stated that he wanted to have the stolen car taken to a "chop shop" and sold in parts. Burke, however, told defendant that it was not necessary to have the car cut up, since Burke would be able to secure registration from the Secretary of State's office to indicate defendant as the owner.

Defendant gave a statement relating these events to the assistant State's Attorney in the presence of a court reporter. At trial, the transcript of defendant's statement was read to the jury. It also was established at trial that the bullets that killed the victim were fired from a gun taken from the home of Roniad Tucker at 12415 South Stewart, where defendant had stayed for a couple of weeks prior to his arrest in January 1981. Two witnesses also testified at trial that they had seen defendant driving the victim's car between January 22

and 26, 1981. Additionally, Larry Anderson testified that defendant had called him within two weeks after defendant's arrest and asked Anderson to state, if asked, that defendant was with Anderson at Anderson's home on January 22, 1981.

During the course of the trial, the jury was taken to the area where Madeline Mullennix' body was found. At the close of the State's case, the defense declined to present any evidence. Defendant waived closing argument. The first two issues in this appeal are raised by the State Appellate Defender. Defendant in his supplemental *pro se* brief has raised the remaining issues.

## I

■■ ■ Defendant initially asserts that the "Witherspooning" of prospective jurors during *voir dire* questioning resulted in the selection of a jury which failed to represent a fair cross-section of the community and which was biased in favor of the prosecution and therefore prone to convict. Defendant notes that prospective jurors were examined regarding their attitudes toward the death penalty, and as a result, nine jurors were excused for cause because of their attitudes against the death penalty.

Defendant asserts that under *Witherspoon v. Illinois* (1968), 391 U.S. 510, 20 L. Ed. 2d 776, 88 S. Ct. 1770, a juror may not be excluded for cause simply because he or she is opposed to the death penalty, but exclusion for cause may occur only with respect to jurors who are so opposed to the death penalty that they make it "unmistakably clear" during *voir dire* that they would automatically vote against the death penalty without regard to the evidence that might be developed in the case before them, or who make it "unmistakably clear" during *voir dire* that their attitude toward the death penalty is so strong that they could not make an impartial decision on the question of the defendant's guilt. 391 U.S. 510, 522 n.21, 20 L. Ed. 2d 776, 785 n.21, 88 S. Ct. 1770, 1777 n.21.

Defendant also notes that the Eighth Circuit Court in *Grigsby v. Mabry* (8th Cir. 1985), 758 F.2d 226, held that "Witherspooning" prospective jurors violates a defendant's sixth amendment right to a fair and impartial jury and his fourteenth amendment right to due process of law. Defendant also references Justice Simon's dissent in *People v. Wright* (1985), 111 Ill. 2d 128, 170-79, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 179, 107 S. Ct. 1327, which is in accord with the *Grigsby* holding.

Defendant asserts that those opposed to the death penalty are an identifiable and sizable portion of the community. Their "actual pur-

poseful" exclusion by the use of challenges for cause and peremptory challenges, defendant asserts, denied him his right to a fair, representative jury and violated the principles of *Duncan v. Louisiana* (1968), 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444, and *Taylor v. Louisiana* (1975), 419 U.S. 522, 42 L. Ed. 2d 690, 95 S. Ct. 692. Therefore, defendant asserts, a reversal of his conviction is mandated.

The State responds that defendant waived this issue on appeal. Since defendant withdrew his written motion to preclude the "Witherspooning" of prospective jurors, he failed to object to the qualification process. Additionally, defendant failed to raise this issue in his post-trial motion. (*People v. Pickett* (1973), 54 Ill. 2d 280.) Further, the State contends, six potential jurors were excused for cause by the trial court as a result of their answers to "reverse-*Witherspoon*" questions. The State contends that the defendant cannot now complain of any alleged error, since he was able to exclude for cause potential jurors who automatically would vote for the death penalty if defendant was found guilty.

In any event, the State asserts, the qualification of prospective jurors in this case was done pursuant to the standards set forth in *Witherspoon*. Additionally, the State notes that the *Witherspoon* holding applies to sentences only, and that the qualification of a jury pursuant to *Witherspoon* does not affect the validity of a conviction. (*Witherspoon v. Illinois* (1968), 391 U.S. 510, 518, 20 L. Ed. 2d 776, 782, 88 S. Ct. 1770, 1775; *Wainwright v. Witt* (1985), 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844; *People v. Wright* (1974), 56 Ill. 2d 523, 535-36.) Therefore, even if there were error, defendant's conviction cannot be reversed based on *Witherspoon*.

Further, the State asserts, the United States Supreme Court and Illinois Supreme Court have held that qualification of jurors under *Witherspoon* does not deny a defendant the right to a jury drawn from a fair cross-section of the community. (*Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 147-48, 106 S. Ct. 1758, 1766; *People v. Free* (1983), 94 Ill. 2d 378, 401, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) The State also contends that defendant's argument that jurors unable to follow the law due to their beliefs concerning capital punishment are a constitutionally cognizable group for purposes of the "fair cross-section" requirement of *Taylor v. Louisiana* (1975), 419 U.S. 522, 528, 42 L. Ed. 2d 690, 697, 95 S. Ct. 692, 696-97, was squarely rejected by the United States Supreme Court in *Lockett v. Ohio* (1978), 438 U.S. 586, 57 L. Ed. 2d 973, 98 S. Ct. 2954. The Illinois Supreme Court adopted the *Lockett* holding in *People v. Free*. Additionally, the contention that *Witherspoon* qualifi-

cation results in a "conviction-prone" jury similarly has been rejected. *Wainwright v. Witt* (1985), 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844; *People v. Morgan* (1986), 112 Ill. 2d 111, 139, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.

Further, the State correctly asserts that defendant's reliance on *Grigsby v. Mabry* (8th Cir. 1985), 758 F.2d 226, is misplaced, since the *Grigsby* decision recently was reversed by the Supreme Court in *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758. *McCree* specifically rejected the argument that a "death-qualified" jury is not impartial based on the absence of *"Witherspoon-*excludables" slanting the jury in favor of conviction. 476 U.S. 162, 173, 90 L. Ed. 2d 137, 147, 106 S. Ct. 1758, 1764.

We hold that as defendant failed to raise this issue in his post-trial motion, the issue has been waived. However, even assuming the issue is reviewable, we hold that there was no error or constitutional violation. Defendant does not deny that a *voir dire* examination of potential jurors was conducted in accordance with *Witherspoon,* but argues that qualifying the jury in compliance with *Witherspoon* rules resulted in a conviction-prone jury, and that the effect of the *Witherspoon* holding denied defendant his constitutional rights. We note that *Witherspoon* does not set forth a standard as strict as the instant defendant asserts. In *Wainwright v. Witt* (1985), 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844, the Supreme Court rejected the requirement, which had been set forth in a footnote in *Witherspoon* and extensively relied on in various cases, that a juror's bias be proved with "unmistakable clarity." The Supreme Court stated that the proper standard, rather, is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. 412, 424, 83 L. Ed. 2d 841, 851-52, 105 S. Ct. 844, 852, quoting *Adams v. Texas* (1980), 448 U.S. 38, 65 L. Ed. 2d 581, 100 S. Ct. 2521.

The trial court in the instant case questioned prospective jurors regarding, *inter alia,* (1) whether they could consider the death penalty among other possible penalties; (2) whether their attitudes toward the death penalty would influence their determination of defendant's guilt or innocence; and (3) whether they would vote automatically for or against the death penalty, no matter what the facts of the case were. The trial court did utilize the question of whether prospective jurors would "automatically" vote for or against the death penalty, a form of question that the Supreme Court has found may often be too rigid (*Wainwright v. Witt* (1985), 469 U.S. 412, 83 L. Ed. 2d 841, 105 S. Ct. 844). A review of the record, how-

ever, indicates that the court went beyond that question where necessary to determine if a potential juror would be impartial in applying the law. For instance, the court asked jurors if they would apply the law as it was tendered to them by the court, regardless of their personal feelings or attitudes.

◼◼ We find no error by the trial judge in the instant case. Deference must be paid to the trial judge, who sees and hears the juror. (*Wainwright v. Witt* (1985), 469 U.S. 412, 426, 83 L. Ed. 2d 841, 852-53, 105 S. Ct. 844, 853; *People v. Free* (1983), 94 Ill. 2d 378, 403, *cert. denied* (1983), 464 U.S. 865, 78 L. Ed. 2d 175, 104 S. Ct. 200.) The trial court in this case properly and extensively questioned prospective jurors.

We also find that defendant's arguments that "Witherspooning" jurors resulted in a jury that failed to represent a fair cross-section of the community or to provide defendant a fair and representative jury or due process of law also must fail. *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758; *People v. Morgan* (1986), 112 Ill. 2d 111, *cert. denied* (1987), 479 U.S. 1101, 94 L. Ed. 2d 180, 107 S. Ct. 1329.

## II

Second, defendant asserts that the State exercised its peremptory challenges to exclude black citizens from the jury venire solely on the basis of race. Defendant asserts that the prosecutor's purposeful exclusion of blacks from the jury violated due process and equal protection and his right to an impartial jury drawn from a fair cross-section of the community.

The record indicates that during *voir dire* questioning, the prosecution exercised a total of 18 peremptory challenges. After the prosecution used its 17th challenge, the prosecution and defense accepted the 10th juror. The trial court then excused without objection the next five jurors for cause. After the fifth juror, Ms. Joan Isbell, was excused by the court for cause, defendant moved to dismiss the remainder of the venire and to have a new venire called, on the basis that Ms. Isbell was the last black person in the venire. Defendant asserted that although there were two black accepted jurors (out of 10 accepted at the time), the prosecution did not intend for defendant to have a cross-section of the community represented on the jury. The prosecution responded that defendant failed to object when the two panels of prospective jurors initially were brought down for questioning. The trial court denied defendant's motion.

Defendant then moved for a mistrial based on the systematic ex-

clusion of blacks from the jury. Defense counsel stated for the record that of the first 17 peremptory challenges exercised by the prosecution, 12 had been used to exclude black persons, and five to exclude white persons. The trial court denied defendant's motion for a mistrial, and jury selection continued. A new venire was called when there were no prospective jurors left in the previous venire. The prosecution exercised one more peremptory challenge against a person of unknown racial identity.

Defendant cites *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and *People v. Wheeler* (Cal. 1978), 22 Cal. 3d 258, 583 P.2d 748, 148 Cal. Rptr. 890, for the proposition that a prosecutor's exercise of peremptory challenges to exclude blacks from a jury does not violate equal protection absent a showing that a pattern of such conduct existed in a number of cases. Defendant contends that the *Swain* test has been met in view of the "many other" Cook County cases where similar racial practices have been used by the prosecution. Defendant also asserts that the record in the instant case demonstrates a constitutional violation, even if other cases in the jurisdiction are not considered, since the State refused to give any justifiable explanation for the exclusion of blacks from the venire despite defendant's objections.

The State responds that since defendant failed to raise this issue in his post-trial motion, he has waived it on appeal. (*People v. Pickett* (1973), 54 Ill. 2d 280.) Assuming the issue is reviewable, the State asserts, its use of peremptory challenges was proper. First, the State asserts, defendant has failed to bring sufficient evidence to show a constitutional violation in case after case as required by *Swain*.

The State also looks to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, which case was pending in the Supreme Court at the time the instant appeal was filed. The State correctly points out that *Batson* rejected the portion of *Swain v. Alabama* concerning the evidentiary burden placed on a defendant who claims that he has been denied equal protection through the State's use of peremptory challenges in case after case over a period of time. *Batson* held that a defendant may make a *prima facie* showing of purposeful racial discrimination in selection of the petit jury by relying solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's own trial. (*Batson v. Kentucky* (1986), 476 U.S. 79, 96, 90 L. Ed. 2d 69, 87, 106 S. Ct. 1712, 1722-23.) Once the defendant makes a *prima facie* showing, the burden shifts to the State to come forward with a neutral explanation for challenging black jurors. The trial court then has the duty to deter-

mine if the defendant has established purposeful discrimination. (*Batson v. Kentucky* (1986), 476 U.S. 79, 97-98, 90 L. Ed. 2d 69, 88-89, 106 S. Ct. 1712, 1723-24.) While the State acknowledges the *Batson* holding, it nevertheless asserts that *Batson* should not apply retroactively to the instant case.

■ We note that at the time of defendant's trial, *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, and its progeny governed the issue of discriminatory use of peremptory challenges. After the conclusion of the instant defendant's trial and while this case was pending on direct appeal, the Supreme Court in *Batson* overruled *Swain*'s requirement of a showing of systematic exclusion of blacks from the venire. Later, in *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708, the Supreme Court held that *Batson* applies to litigation pending on direct review when *Batson* was decided. As the instant case was pending when *Batson* was handed down, *Batson* applies to this case. Therefore, defendant's argument which relies on the *Swain* standard must fail.

The State contends that assuming *Batson* applies to the instant case, the record fails to demonstrate a *prima facie* case of discrimination, as the record is unclear as to the final jury composition. Further, although at least two of the first 10 selected jurors were black, the record fails to indicate which two jurors they were. The State asserts that a clear showing of the racial identities of the seated jurors and the excluded jurors is necessary to preserve this issue on appeal. Absent a complete record, the State contends, the issue is waived. *People v. Gaines* (1981), 88 Ill. 2d 342, 358-59, *cert. denied* (1982), 456 U.S. 1001, 73 L. Ed. 2d 1295, 102 S. Ct. 2285.

Even if the issue has not been waived, the State asserts, the record does not show that blacks were excluded from the jury solely because of race. On appeal the State notes that at least two jurors were black, and, more likely, there were probably three black jurors and one black alternate juror. That is, 25% of the jury was black, which is about the same percentage of Cook County residents 18 years and older who are black. Additionally, the record shows that several black prospective jurors were excused as a result of their answers to "*Witherspoon*"-type questions, or questions regarding whether they would follow the law even if they did not agree with it. Other black prospective jurors were excused because they had been arrested or charged with an offense. Additionally, the State contends that defendant's assertion that he has been denied his right to an impartial jury drawn from a cross-section of the community must fail, since the United States Supreme Court and Illinois Supreme Court consistently

have declined to extend the fair–cross-section requirement of the sixth amendment to petit juries. *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712; *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758; *People v. Williams* (1983), 97 Ill. 2d 252, 278, *cert. denied* (1984), 466 U.S. 981, 80 L. Ed. 2d 836, 104 S. Ct. 2364.

■■ ■ We hold that defendant established a *prima facie* case of purposeful discrimination under *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712. *Batson* held that a defendant may show a *prima facie* case of discrimination first by showing that he is a member of a cognizable racial group. Second, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits discrimination. Third, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used his peremptory challenges to exclude veniremen from the petit jury on account of race. A pattern of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during *voir dire* examination and in exercising his challenges may support or refute an inference of a discriminatory purpose.

Defendant in the instant case sufficiently raised an inference of purposeful discrimination. At trial defense counsel noted that defendant is black and that at least 12 of the 18 peremptory challenges used by the State were exercised against black persons. The prosecution, however, failed at trial to offer reasons for excluding blacks from the venire when challenged by defendant. Since the trial court denied defendant's motion for a mistrial without requiring the State to give a neutral explanation for excluding black prospective jurors, we remand this case with directions that the State be given the opportunity to come forward with a neutral explanation for the exclusion of the black prospective jurors. If the trial court decides that the State has come forward with a neutral explanation for the exercise of its peremptory challenges excluding the black prospective jurors, and the neutral explanation is sufficient to rebut defendant's *prima facie* case of purposeful racial discrimination, then defendant's conviction will stand. Defendant then may appeal any alleged error that is made in the trial court after the remandment. *People v. Sims* (1987), 154 Ill. App. 3d 528, 507 N.E.2d 178; *People v. Johnson* (1986), 148 Ill. App. 3d 163, 498 N.E.2d 816.

■■ Finally, we acknowledge defendant's assertion that the United States Supreme Court in *Batson* expressly declined to address the

sixth amendment "fair cross-section" challenge to discriminatory use of peremptory challenges. Defendant notes in his reply brief that the Supreme Court has not expressly decided this issue. under the sixth amendment. Defendant suggests, however, that this court decide the discrimination issue under the sixth amendment. We note, however, that in *Lockhart v. McCree* (1986), 476 U.S. 162, 90 L. Ed. 2d 137, 106 S. Ct. 1758, the Supreme Court stated that the fair–cross-section requirement under the sixth amendment has a limited scope, as "a direct and inevitable consequence of the practical impossibility of providing each criminal defendant with a truly 'representative' petit jury." (476 U.S. 162, 174, 90 L. Ed. 2d 137, 148, 106 S. Ct. 1758, 1765.) We find, in any event, that defendant has failed to set forth any specific argument to show how the sixth amendment fair–cross-section requirement has been violated or to justify an extension of *Batson.*

## III

■ Defendant's third contention, and the first contention raised in his *pro se* brief, is that Cook County, as a "home rule" unit, lacks the power to define and provide for the punishment of a felony. Defendant asserts that the Illinois Constitution defines Cook County as a home rule unit and as such, lacks the power to provide for the punishment of a felony. Ill. Const. 1970, art. VII, secs. 4, 6.

The State responds that there was no error, as the Illinois legislature, and not Cook County as a home rule unit, defines and provides for the punishment of a felony. (*People ex rel. Carey v. Chrastka* (1980), 83 Ill. 2d 67, 79.) The State asserts that defendant has misconceived the respective roles of the legislature and judiciary. *Roth v. Yackley* (1979), 77 Ill. 2d 423; *People v. Williams* (1977), 66 Ill. 2d 179.

We agree with the State and find that defendant has misconstrued the law. There was no error committed.

## IV

■ Next defendant contends that the trial court erred in failing to grant two pretrial motions. The first was a motion to quash arrest and suppress evidence, which defendant filed and argued *pro se.* Defendant asserts that the issues raised in this motion are reviewable as "plain error." (87 Ill. 2d R. 615(a).) Defendant also asserts that there was an unnecessary delay between his arrest and the time formal charges were brought against him. Ill. Rev. Stat. 1981, ch. 38, par. 109—1(a).

The second motion referenced by defendant was a motion to suppress statements given to police and to assistant State's Attorneys. Defendant asserts that the trial court erred in denying the motion since defendant was not present during argument on the motion. Further, defendant asserts that the trial court failed, due to the trial judge's allegedly deteriorating health, to properly review testimony at the hearing on the motion.

The State responds that defendant's assertions of error regarding the motions are waived, since he fails to support the assertions with argument or citation of authority. (87 Ill. 2d R. 341(e)(7).) Assuming *arguendo* that these issues are heard on appeal, the State contends, there was no error. First, the trial court properly denied the motion to quash arrest, as there was probable cause to arrest defendant. Further, the minimal delay in bringing defendant before a judge was reasonable. *People v. Cobb* (1983), 97 Ill. 2d 465; *People v. Lippert* (1982), 89 Ill. 2d 171, *cert. denied* (1982), 459 U.S. 841, 74 L. Ed. 2d 85, 103 S. Ct. 92; *People v. Lucas* (1980), 88 Ill. App. 3d 942, 410 N.E.2d 1040.

Next, the State notes that at the hearing on defendant's motion to suppress certain statements, the trial court found that the statements were voluntary. Further, the trial court held that *Miranda* warnings were properly given at all necessary stages of the investigation and arrest and that defendant chose to speak voluntarily and freely. The trial court properly denied defendant's motion to suppress based on these findings. (*People v. Martin* (1984), 102 Ill. 2d 412, 425, *cert. denied* (1984), 469 U.S. 935, 83 L. Ed. 2d 270, 105 S. Ct. 334; *People v. Holloway* (1985), 131 Ill. App. 3d 290, 475 N.E.2d 915.) As the trial court's decisions are not contrary to the manifest weight of the evidence, the State contends, this court must not disturb the decisions. *People v. Davis* (1983), 95 Ill. 2d 1, *cert. denied* (1983), 464 U.S. 1001, 78 L. Ed. 2d 697, 104 S. Ct. 507.

Additionally, the State maintains that defendant's assertions concerning the trial judge's health and observations are wholly unsupported by the record and should be stricken as being clearly improper. Finally, the State asserts that defendant's contention that he was not present for the arguments on the motion to suppress and the court's ruling on the motion is contradicted by the supplemental record, which indicates that at the start of the proceedings on the motion, the court stated that all parties were present. *People v. Bonner* (1979), 68 Ill. App. 3d 424, 386 N.E.2d 366.

In reply defendant asserts that he invoked his right to counsel during custodial interrogation and had not waived that right when he

responded to police-initiated interrogation after again being advised of his rights. Defendant asserts that the use of his confessions violated the fifth amendment. (*Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880.) Defendant also asserts that the police denied his requests to speak to his attorney.

Assuming that these issues are reviewable, we agree with the State and find that the trial court committed no error in denying defendant's motions to quash arrest and suppress statements, as the evidence supports the trial court's findings and indicates that defendant was present at the hearing. We also note that the record fails to support defendant's assertion that any alleged requests for counsel were improperly denied by the police. Additionally, defendant's assertion that the trial court failed properly to review the evidence is unsupported by the record.

## V

■■ Defendant also asserts that the trial court erred in failing to grant his motion to dismiss the information. Defendant contends that he was unlawfully charged by information and was denied his fifth amendment right to a grand jury indictment. Defendant also asserts that the information contains perjured statements by the prosecutor.

The State responds that defendant waived this issue by failing to support his allegation of error with any citation of authority or argument. (87 Ill. 2d R. 341(e)(7); *People v. Shaw* (1985), 133 Ill. App. 3d 391, 478 N.E.2d 1142.) Further, the State asserts that even if the issue has not been waived the trial court properly denied defendant's motion since the prosecution complied with the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, pars. 111—2, 111—3), and defendant has no right to be charged by indictment rather than information (*People v. Sievers* (1978), 56 Ill. App. 3d 880, 885, 372 N.E.2d 705, 708).

We find no merit in defendant's argument and hold that the trial court properly denied defendant's motion to dismiss. The State properly asserts that defendant has no right to be charged by indictment rather than information. (*People v. Sievers* (1978), 56 Ill. App. 3d 880, 372 N.E.2d 705.) Further, defendant's assertions that the information contained perjured statements is unsupported by the record, and, as these assertions lack legal authority, they are deemed waived. 87 Ill. 2d R. 341(e)(7).

## VI

■■ Next, defendant asserts that the trial court erred in denying

his oral motion to waive his presence for closing arguments and the return of the verdict. Defendant also asserts that the trial court improperly failed to enter a sentence on the charge of armed robbery.

The State responds that defendant waived the issue of the trial court's ruling on his motion to waive his presence by failing to cite supporting authority or argument. (87 Ill. 2d R. 341(e)(7).) The State asserts that assuming *arguendo* the issue is not waived, the trial court's denial of the motion was proper since the record indicates that defendant had an active role in his defense at trial, and there is no evidence of prejudice. Therefore, any alleged error is harmless.

Further, the State acknowledges that the record shows the trial court failed to enter a sentence on the charge of armed robbery. While the jury found defendant guilty of both armed robbery and murder, the trial court imposed a sentence only on the murder conviction. The State asserts that the record is unclear as to the reason the court failed to impose a sentence for the armed robbery conviction. As the armed robbery offense is not a lesser included offense of the murder conviction, the State requests that this court remand this case to the trial court for the purpose of sentencing defendant on the armed robbery conviction.

We find that defendant waived the issue of the trial court's denial of his motion to waive his presence by failing to cite supporting authority. (87 Ill. 2d R. 341(e)(7).) Further, we remand this case to the trial court with instructions that the court impose a sentence on defendant's armed robbery conviction. *People v. King* (1977), 66 Ill. 2d 551, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.

## VII

■■ Defendant also asserts that the trial court erred in denying his motion to subpoena the employment records of certain Chicago police officers. Defendant asserts that the error resulted in a denial of his sixth amendment right to cross-examine and his right to discovery.

The State responds that defendant has waived this issue by failing to cite authority in support of his assertion. (87 Ill. 2d R. 341(e)(7).) Assuming the issue is reviewable, the State asserts there was no error since defendant failed to establish that the records were material or relevant, and his assertion that the records might aid his defense amounted to a mere "fishing expedition."

We hold that the trial court properly denied the motion, as the relevancy of the records was not shown. The trial court has broad discretion in ruling on issues of relevancy and materiality. (*People v.*

*Anderson* (1985), 134 Ill. App. 3d 80, 479 N.E.2d 1164.) We find no abuse of that discretion here.

## VIII

■■■ Defendant next asserts that the testimony of witness Sylvia Allen was given as a direct result of monetary compensation that Allen received from the prosecutor. Defendant asserts that he first learned of this unlawful action at the time of the hearing on his motion for a new trial.

The State responds that defendant has waived this issue by failing to support his assertion with proper authority or argument. (87 Ill. 2d R. 341(e)(7).) In any event, the State contends, there was no error since the evidence, including a sworn affidavit of the prosecutor, indicates that the witness did not receive monetary compensation for her testimony, but rather was given cab fare to go home when she was stranded at the Markham courthouse after a pretrial conference. Further, the State contends, there is no evidence that the money for the cab fare influenced her testimony in any manner.

We agree with the State and find that defendant's allegations are not supported by the evidence. There was no error by the trial court.

## IX

■■■ Defendant also contends that the prosecutor, in opening and closing statements to the jury, made excessive references to the victim's family members, solely to inflame the passions of the jury, resulting in prejudice to defendant.

The State responds that defendant waived this issue by failing to object at trial and failing to raise it in his post-trial motion. Assuming this issue has been preserved, the State asserts, there was no harmful error. The State contends that the testimony of the victim's sons was relevant and admissible and argument by the prosecutor was proper. The children played an active role in the investigation of their mother's disappearance, and one son was called to testify in part as to the life and death of the victim. Further, there was no undue emphasis of the fact that the victim left a family surviving. The prosecutor's comments during opening and closing statements to the jury were properly limited to the investigation of the whereabouts of the victim and her car.

We find that defendant waived this issue by failing to object at trial. (*People v. Pallardy* (1981), 93 Ill. App. 3d 725, 417 N.E.2d 851.) However, even assuming the issue was preserved, we find no error, as the testimony of the children and comments by the prosecutor were

properly limited in scope. *People v. Bartall* (1983), 98 Ill. 2d 294.

## X

■■ Defendant also asserts that the trial court erred in not granting a mistrial based on overwhelming pretrial publicity.

The State responds that defendant waived this issue by failing to support his assertion with proper authority or argument. (87 Ill. 2d R. 341(e)(7).) In any event, the State asserts, the trial court properly denied defendant's motion for a mistrial since the record demonstrates that the court repeatedly admonished the jury regarding the necessity of refraining from reading about the trial or watching anything about it on television, and since the jurors indicated to the court that they had not seen or read any media coverage of the trial.

We hold that the trial court properly denied defendant's motion, as defendant failed to bring evidence to show that the jury was exposed to or improperly influenced by media coverage of the investigation or trial of this matter. *People v. Henderson* (1976), 39 Ill. App. 3d 502, 348 N.E.2d 854.

## XI

■■ Next, defendant contends that the trial court erred in allowing a juror to remain on the jury after he was contacted by a person alleging to represent the Cook County sheriff's office, who apparently questioned the juror regarding the trial. Defendant also asserts that the trial court improperly failed to determine what was conveyed to the juror.

The State responds that defendant waived this issue by failing to object at trial, failing to raise it in his post-trial motion, and failing to support his assertion with proper authority or argument. (87 Ill. 2d R. 341(e)(7).) Assuming the issue is reviewable, the State contends, the trial court properly allowed the juror to remain on the jury since the juror notified the court of the incident, since the caller did not say anything harmful or intimidating, and since the court determined that the juror could still be fair and impartial.

We find that defendant has waived this issue by failing to raise it in his post-trial motion. (*People v. Pallardy* (1981), 93 Ill. App. 3d 725, 417 N.E.2d 851.) We hold that even if defendant preserved this issue for appeal, the trial court acted properly in questioning the juror and determining that the juror could continue objectively to serve on the jury even after receiving the call. There was no error.

## XII

■■■ Defendant also asserts that the trial court erred in allowing various instructions to go to the jury over his objection.

In response the State acknowledges that the trial court gave two instructions over defendant's objections. One instruction concerned the law of accountability, and the second was regarding the felony murder doctrine. The State contends, however, that defendant waived his objections to the jury instructions by failing to raise them in his post-trial motion and by failing to support his assertions with proper authority or argument. (87 Ill. 2d R. 341(e)(7).) Assuming *arguendo* the issue is reviewable, the State contends, the jury instructions were properly given, as they were supported by the evidence.

We find that defendant has waived this issue, as he has failed even to specify which instructions were objectionable (*People v. Tannenbaum* (1980), 82 Ill. 2d 177), and fails to cite authority in support of his assertions (87 Ill. 2d R. 341(e)(7)).

## XIII

■■■ Defendant also asserts that the trial court erred in denying his motion to dismiss his attorney. Defendant asserts that his attorney acknowledged that he was unable to represent defendant to the best of his ability. Defendant asserts he has been denied effective representation.

The State responds that there was no error. The State notes that the trial court initially allowed defendant to proceed *pro se* with his defense, with "standby" counsel. Defendant later withdrew his motion to appear *pro se* and asked the court to appoint his trial counsel to represent him again, and counsel indicated to the court that he was capable of representing defendant in a professional manner. The State notes that counsel was defendant's fifth appointed counsel, and that defendant had moved at various times prior to trial to dismiss all of his other attorneys.

We find no error in the trial court's denial of defendant's motion to dismiss his attorney. *People v. Gornick* (1982), 107 Ill. App. 3d 505, 437 N.E.2d 892.

## XIV

■■■ Defendant next contends that the trial court erred in not ordering him to be examined by a psychiatric expert prior to sentencing to determine his competency and fitness to proceed.

The State responds that there was no error since the trial court extensively questioned defendant and determined that he was able to

cooperate with his attorney and understood the nature of the proceedings. Further, the State contends, no *bona fide* doubt of defendant's fitness was raised. The State asserts that the granting of a psychiatric examination is within the discretion of the trial judge, and there was no abuse of discretion here. *People v. Dominique* (1980), 86 Ill. App. 3d 794, 408 N.E.2d 280.

We agree with the State and find no abuse of discretion.

## XV

■■■ Finally, defendant contends that the trial court erred in denying his motion to dismiss and discharge the murder prosecution. Defendant contends that the prosecutor proceeded against him on a burglary charge solely as a means of securing a conviction against him to use in aggravation on the murder charge. Additionally, defendant asserts that he was not charged on the murder count within 160 days of the burglary prosecution, as is required by section 103—5(e) of the Code of Criminal Procedure (Ill. Rev. Stat. 1981, ch. 38, par. 103—5(e)).

The State responds that defendant waived this issue by failing to cite supporting authority or argument. (87 Ill. 2d R. 341(e)(7).) In any event, the State asserts, the record reveals that defendant was arrested on the burglary charge several months before his arrest on the murder charge and that the prosecution merely proceeded against defendant in the order in which he was charged. The State contends that the trial court properly denied defendant's motion.

Defendant waived this issue by failing to include it in his post-trial motion. We find, however, that even if this issue has not been waived, the record does not support defendant's assertions and there was no error.

As stated hereinabove, this matter is remanded to the trial court with instructions that a hearing be held at which the trial court allows the State to come forward with a neutral explanation for its exercise of peremptory challenges against blacks from the jury venire and, additionally, for sentencing on defendant's armed robbery conviction if the trial court determines that the State has come forward with a sufficient neutral explanation.

Remanded with instructions to the trial court.

WHITE, J., concurs.

JUSTICE RIZZI, specially concurring:

I agree with the result reached by the majority. However, I do not agree with the majority's statements or conclusions regarding the sixth amendment challenge to the State's systematic exclusion of blacks from the jury. In my opinion, a defendant's right to an impartial jury under the sixth amendment gives him a constitutional entitlement to a jury drawn from a fair cross-section of the community. Therefore, I believe that the State may not at any stage of the jury selection process affirmatively frustrate this entitlement by systematically excluding cognizable racial groups from the jury in any case solely because of their race.