THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEOFFREY FREEMAN, Defendant-Appellant.

First District (3rd Division)   Nos. 1—89—2414, 1—89—2500 cons.

Opinion filed October 9, 1991.

Jenner & Block, of Chicago (Joel T. Pelz, Glenn E. Heilizer, and Caesar A. Tabet, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Bonnie Meyer Sloan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GREIMAN delivered the opinion of the court:

Defendant, Geoffrey Freeman, was convicted of the murder and armed robbery of 71-year-old Madeline Mullenix and was sentenced to natural life imprisonment. This court upheld the jury conviction (*People v. Freeman* (1987), 162 Ill. App. 3d 1080, 516 N.E.2d 440 (hereinafter *Freeman I*)), but found *prima facie* discrimination by the prosecution's exercise of peremptory challenges during jury selection and remanded the matter to the circuit court of Cook County for a *Batson* hearing. *Batson v. Kentucky* (1986), 476 U.S. 79, 93, 90 L. Ed. 2d 69, 85, 106 S. Ct. 1712, 1722.

The judge who presided over the trial died shortly thereafter and the *Batson* hearing was assigned to another judge (hereinafter the hearing judge).

At the *Batson* hearing, the hearing judge found the State provided racially neutral explanations for the exclusion of the 13 jurors in question and affirmed the conviction.

For the reasons set forth below, this matter is remanded to the trial court for a new *Batson* hearing.

In *Freeman I* when we remanded the case for a *Batson* hearing, we gave the State an opportunity to come forward with neutral explanations for the exclusion of certain black prospective jurors, and we said:

"If the trial court decides that the State has come forward with a neutral explanation for the exercise of its peremptory challenges excluding the black prospective jurors, and the neutral explanation is sufficient to rebut defendant's *prima facie* case of purposeful racial discrimination, then defendant's conviction will stand." *Freeman,* 162 Ill. App. 3d at 1094.

At the commencement of the *Batson* hearing, the hearing judge ruled that all witnesses at the *Batson* hearing, including the trial prosecutors, would be placed under oath and subject to cross-examination and determined that a mere statement by the trial prosecutors would not overcome the *prima facie* discrimination determined by us in *Freeman I.*

Immediately thereafter, July 16, 1988, the State filed a motion for a supervisory order in the Illinois Supreme Court requesting that the hearing judge's requirements of testimony under oath by the prosecutor be vacated. *People v. Freeman* (May 26, 1989), No. 67180, unpublished supervisory order.[1]

The unpublished supervisory order of May 26, 1989, obviated the requirement of the prosecutors being sworn and subject to cross-examination regarding their use of peremptory challenges. The Illinois Supreme Court first decided this issue in *People v. Young* on February 22, 1989; the rehearing of that case being denied on May 26, 1989, the day the unpublished supervisory order in this case was issued. Given the narrow time frame, it is understandable that the hearing judge may not have been completely familiar with the case. The supervisory order might be considered the precursor of later supreme court cases which make it clear that prosecutors would not be under oath and subject to cross-examination. *People v. Hope* (1990), 137 Ill. 2d 430, 560 N.E.2d 849; *People v. Mack* (1989), 128 Ill. 2d 231, 538 N.E.2d 1107; *People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.

The Illinois Supreme Court in *Young* observed that the United States Supreme Court in *Batson* refrained from making prosecutors witnesses in a trial within a trial. *Batson* left the specific procedures for conducting a hearing to State courts.

■ Since that time, Illinois has provided an even more restrictive setting for *Batson* hearings. (*Hope,* 137 Ill. 2d 430, 560 N.E.2d 849.) Criminal evidentiary procedures such as those set out in Supreme

---

[1]The Illinois Supreme Court initially denied the State's motion for a supervisory order on August 19, 1988, but vacated that order on August 25, 1988, on its own motion and continued the State's motion.

Court Rule 412 (134 Ill. 2d R. 412) are not applied mandatorily to post-conviction *Batson* hearings. *Hope*, 137 Ill. 2d at 484.

At the *Batson* hearing, the prosecutor gave explanations for the exclusion of each of the 13 African-Americans excluded from the *Freeman I* jury. The prosecutor provided various explanations, some of which were duplicative with respect to these members of the venire.

After examination of the transcript of the hearing and the trial, the hearing judge concluded: "the record does not contain a reasonable explanation for the use of at least four of the [State's] peremptory challenges" and that "normally, the assessment of a witness's credibility, is essential to the fact-finding process. In this case the prosecutor was not a witness but an officer of the court and an advocate for his own cause."

The hearing judge went on to state "the court does not find [the prosecutor's] explanations to be truthful since he refused to take an oath and to be subject to cross-examination *** the [s]upervisory [o]rder requires me to evaluate the unsworn statements of the prosecutor. But, in America trial judges are not commanded to believe anyone."

The trial court also believed that the supervisory order prohibited cross-examination of the trial prosecutors and the offering of rebuttal testimony and that he was required to accept the State's facially neutral explanations.

Thereafter, the trial court denied the defendant's motion for a new trial.

The hearing judge was required to sail on somewhat uncharted waters. The trial court had only the *Young* case as a guideline since *Hope* and *People v. Harris* (1989), 129 Ill. 2d 123, 544 N.E.2d 357, had yet to be decided. These cases would have been instructive for the hearing judge in determining the nature of the hearing over which he was about to preside.

At best it is difficult for a reviewing court to completely understand the nature of the hearing judge's ruling. On the one hand, he finds the State's explanations were not credible and that the State apparently did not bring forth sufficient evidence to establish appropriate explanations for the peremptory challenges. On the other hand, the hearing judge ultimately concluded that he was required to accept the State's facially neutral *Batson* explanations as conclusive and declined to weigh the credibility of the State's witnesses in providing explanations.

The hearing judge observed that the prosecutor's *Batson* statement was "substantially supported" by the record but determined "that in view of the restrictions imposed by the supervisory order" he could not say whether he believed the prosecutor. From this, we can only conclude that the hearing judge provided an overly restrictive interpretation of the supervisory order of May 26, 1989.

This court recently held in *People v. Kindelan* (1991), 213 Ill. App. 3d 548, that the State's burden of proving neutrality is "grounded in [the] credibility" that the trial judge accords the prosecutor. The hearing judge in the case at bar found the statements were facially neutral as compared to the record, but did not find them "truthful" since the prosecutor declined to be sworn. It should be clear that *Kindelan* requires the hearing judge at a *Batson* hearing to weigh the credibility of the prosecutor. Requiring the prosecutor's oath ought not to be the cutting edge for this task.

Once a defendant has established a *prima facie* case of discrimination, the State has the burden of providing a race-neutral explanation for each peremptory challenge to which defendant objects. (*Batson*, 476 U.S. at 93, 90 L. Ed. 2d at 85, 106 S. Ct. at 1722.) The State's explanations must be clear, reasonably specific, legitimate and nonracial. (*Hope*, 137 Ill. 2d at 467.) They must be more than a mere assertion that the prosecution acted in good faith or without discriminatory motive. *Harris*, 129 Ill. 2d at 174.

The trial court must make a sincere and reasoned attempt to evaluate the State's explanations (*Hope*, 137 Ill. 2d at 467) and must assess the genuineness of the State's assertions to determine if they are legitimate and, in fact, race-neutral. *People v. Baisten* (1990), 203 Ill. App. 3d 64, 77, 560 N.E.2d 1060.

Based on this record, we are unable to determine whether the hearing judge appropriately weighed the evidence in determining whether there was a *Batson* violation. Accordingly, we believe that the hearing judge should be afforded another opportunity to examine the *Batson* allegations and we will therefore remand this matter to the trial court for a new *Batson* hearing.

Three additional matters remain for our consideration: (i) defendant's right to propound interrogatories; (ii) defendant's right to the discovery of certain documents; and (iii) defendant's right to provide rebuttal testimony.

As to the first issue, we agree with the hearing judge's determination that the supervisory order of May 26, 1989, precluded the use of interrogatories directed at the State. Although the order is silent with respect to interrogatories, the spirit of the court's order

seems clear, and defendant ought not to be allowed to circumvent the prohibition against cross-examination by interrogation through interrogatories.

Illinois decisions have made it clear that the Illinois Supreme Court expects the *Batson* hearings to more closely follow the format of a preliminary hearing rather than a full-blown criminal trial. In *Mack*, the court rejected the notion of expanded trial procedures or procedural safeguards when the *Batson* hearing was held before a judge different than the trial judge. *Mack*, 128 Ill. 2d at 252.

■ As to the second issue, nothing in the supervisory order precludes initiation of reasonable discovery by the defendant. As in all cases, the court has control of that discovery process and can determine the reasonableness of the request. If material contained in training manuals or policies of the State's Attorney would add to the court's finding of *prima facie* discrimination and increase the State's burden, the trial court should be able to consider such matters. It will assist in leading to a just result in ensuring that defendant had a fair trial by a jury appropriately selected.

Although *Mack* establishes the kinds of limitations the court wishes to impose on *Batson* hearings, it does not expressly rule upon the propriety of a discovery request. The defendant ought to be able to determine whether the questions asked of veniremen and the exercise of peremptory challenges are part of a scheme or a plan to limit the minority members of a jury before which defendant will be tried.

*Mack* did address the issue of discovery of the prosecutor's notes. Because a prosecutor's notes are protected from disclosure under the work-product doctrine unless they contain material favorable to the defense under *Brady v. Maryland* (1963), 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194, the notes in *Mack* were inspected *in camera* by the hearing judge. The judge found that the notes did not contain material favorable to the defendant and denied the motion to compel production. (*Mack*, 128 Ill. 2d at 247.) Here, the hearing judge inspected the prosecutor's notes *in camera* and determined that the notes supported the prosecutor's explanations. The hearing judge concluded that there was no material favorable to defendant and that discovery of the notes should be denied. On that basis, we agree.

■ As to the third issue, defendant sought to introduce testimony of excluded jurors to rebut the State's explanations for its exercise of peremptory challenges. The hearing judge excluded the rebuttal testimony of challenged jurors, stating:

"I think that [testimony] would go beyond the scope of the *Batson* decision. Particularly, since the Appellate Court has already

found there is *prima facie* evidence of discrimination in the exclusion of these jurors. The Court will not permit excluded jurors to be called at this limited hearing."

Generally, a defendant should be afforded the opportunity to rebut the prosecutor's *Batson* explanations for the exercise of peremptory challenges. (*Harris*, 129 Ill. 2d at 177; *Young*, 128 Ill. 2d at 27.) It is the duty of the hearing judge to determine whether the State's explanations are race-neutral, and it is the judge's decision whether certain rebuttal testimony would be helpful to his determination.

In *Young*, the Illinois Supreme Court held that the trial court properly refused to admit rebuttal testimony of defendant and his trial counsel regarding a juror's responses since the hearing judge had also presided over the *voir dire* and had observed the demeanor of the prospective jurors directly. *Young*, 128 Ill. 2d at 27-28.

In *Harris*, the court clearly set out the format for a *Batson* hearing:

"[I]n *Batson*, the Court stated that once a defendant makes out a *prima facie* case of discrimination, the prosecutor need only 'articulate a neutral explanation related to the particular case to be tried.' [Citation.] *The defendant may then attempt to rebut the prosecution's explanation as being pretextual.* [Citation.] At the conclusion of the hearing, the trial court has the duty to weigh the evidence and 'determine if the defendant has established purposeful discrimination.' " (Emphasis added.) *Harris*, 129 Ill. 2d at 177.

The court specifically authorizes rebuttal evidence by the defense and commands the hearing judge to carefully weigh the evidence. *Harris* does not limit the kind of rebuttal evidence which can be offered. In the instant case, the defendant sought to offer testimony of excluded jurors, and under *Young* and *Harris*, a hearing judge may properly find their testimony helpful in determining whether the State's race-neutral explanations are pretextual. *Harris*, 129 Ill. 2d at 177; *Young*, 128 Ill. 2d at 27.

Accordingly, at the new *Batson* hearing the defendant shall be permitted to offer testimony of excluded jurors for the purpose of demonstrating that the State's race-neutral explanations are pretextual.

Finally, we reiterate the instruction given the trial court when we initially reviewed defendant's case in *Freeman I* and again direct that the trial court enter sentence on defendant's armed robbery conviction if the State prevails at a new *Batson* hearing. If the defendant prevails at the hearing, this defendant shall be afforded a new trial on

armed robbery as well as murder. See *People v. Scott* (1977), 69 Ill. 2d 85, 87-88, 370 N.E.2d 540; *People v. Lilly* (1974), 56 Ill. 2d 493, 495-96, 309 N.E.2d 1 (which allow us to pass upon the armed robbery conviction for which no sentence has been entered).

This matter is remanded for a new *Batson* hearing and for entry of a sentence upon defendant's conviction for armed robbery.

Remanded with directions.

RIZZI and WHITE,* JJ., concur.

---

*Justice White participated in this opinion prior to his retirement.